FRANKLIN,
January,
1840.

WILLIAM WARREN *v.* JOHN SAXBY.

One who performed services as a physician, without being licensed, while the statute of 1820 was in force, cannot recover for such services after the repeal of that act.

The statute not only suspends all right of action for such services, but absolutely removes all obligation resulting from their performance, and makes them wholly gratuitous.

THIS was an action of book account which came to the county court by an appeal from the decision of a justice of the peace. Judgment to account having been rendered, an auditor was appointed who, afterwards, reported, that the parties appeared before him and the plaintiff presented his account against the defendant, amounting to eighteen dollars; that the account was for services rendered and medicines furnished by the plaintiff for the defendant's wife at the defendant's request; that, at the time the services were rendered and the medicines furnished, by the plaintiff, he was not a member of any legally constituted medical society within this state; had not obtained the degree of bachelor of arts or doctor of physic in any academy, college or university within this state, or elsewhere, having authority to confer such degree, and had not been licensed to practice physic or surgery agreeably to the provisions of an act of the legislature passed November 14, 1820, entitled "an act, regulating the practice of physic and surgery within this state;" that the plaintiff, at the time of rendering the services and furnishing the medicines charged in his account, called himself a practising physician and in that capacity rendered said services and furnished said medicines.

It appeared that the plaintiff's account accrued while said act of November 14, 1820, was in force, which act was repealed at the session of the legislature in October, 1838.

The auditor further reported, that if, from the foregoing facts, the court should be of the opinion that the plaintiff was entitled to recover, he found a balance of eighteen dollars due to the plaintiff; otherwise he found nothing due to either party. The county court rendered a judgment for the defendant and the plaintiff excepted.

*S. S. Brown,* for plaintiff.

There are two methods by which the legislature can affect contracts. These are,

1. By making the subject matter of the contract illegal. The contract would then be void of course. The legislature can make no contract void, about which the parties have a right to contract. Should they attempt it, the law would be unconstitutional and not binding upon courts. The constitution of the U. S. §. 10, declares that no state shall make any law impairing the obligation of contracts. This does not refer to contracts in existence at the time the law is made, for, if the legislature should declare a contract already made to be void, the law would be *ex post facto*, which is clearly prohibited in another part of the same article. This, then, relates to contracts to be made subsequent to the passing of the act. The legislature can make the thing to be done illegal and the contract to perform it would be void, but, if the thing to be done is legal, they cannot make part of the contract relating to its performance void.

2. The legislature can act upon the remedy. This does not impair the obligation growing out of the contract. There is a material difference between the contract and the remedy, and the law may affect the remedy and still leave the contract in force. The statute regulating the practice of physic and surgery has not made it illegal for persons, not having a license, to practice. It no where declares either the practice wrong or against law. It leaves persons free to employ those who have license, and those who have not equally free to be employed.

The case then stands thus ;---The plaintiff had a right to be employed to perform the services. He had a right to receive pay for his services, if the defendant was willing to pay him, but could not enforce the obligation in a court of justice.

The repeal of the law left the plaintiff's remedy precisely where it stood before the law was passed.

*H. R. & J. J. Beardsley,* for defendant.

The statute of November 14, 1820, relating to the practice of physic and surgery, not only takes away the *remedy* of unlicensed physicians or quacks, to collect pay for their services, but it takes away from such pretenders all " right to make any demand" therefor.

The repeal of this statute, the defendant insists, does not restore to the plaintiff the " right to make any demand for

services rendered or for fees accrued, while the act afore-
said was in force.   Had not the right been taken away in
the first instance, the subsequent restitution of the remedy
might possibly have revived the right, but the right having
been divested, the revival of the remedy does not restore it.

The statute is to be construed liberally as one for the pro-
tection of the public health by the suppression of quackery,
and preventing the impositions of empirics.  *Spalding* v. *the
Inhabitants of Alford*, 1 Pick. R. 33.   14 Johns. 369.  *Al-
cott* v. *Barber*, 1 Wendall, 526.

The opinion of the court was delivered by

REDFIELD, J.—In this case the plaintiff seeks to recover
for medicines, and for services rendered the defendant, as a
physician, without being licensed in the manner provided by
the statute of 1820, and while that act was in force.   The
act provides, that no person, who shall be employed in the
practice of physic and surgery &c., within this state, *shall,
hereafter, have any right to make any demand for the same,
or shall be entitled to the benefit of law, for the collec-
tion of his fees*, &c., unless &c., stating the modes of license.
This statute was repealed before the commencement of the
present action.   It is now contended, that the plaintiff is en-
titled to recover.

The history of legislation, in regard to apothecaries, sur-
geons and physicians, from the date of the statute of 14
Henry 3, when the subject was first attempted to be regula-
ted by law in England, to the present time, would afford a
curious subject of investigation, and might tend, in some de-
gree, to throw light upon the present question.   Since that
period, there have been many statutes passed in England,
with a view to establish scientific practice and to discourage
mere pretenders.   The college of physicians was incorpora-
ted there as early as 14th. Henry 6, with most enormous
powers, both of restriction and coercion, in relation to all
who attempted either of the above named acts.   And it
seems still to be supposed, there, that much harm may be pre-
vented by these legislative restrictions.   In this state, no
doubt, the legislature who passed the statute of 1820, enter-
tained the same opinion.

But, as the grand contest here is, *first*, for subsistance,

and, *finally*, for wealth, which is supposed, by many, to
confer almost the only *solid* distinction, it was well supposed, by the legislature, that, by depriving mere pretenders, in
physic and surgery, of all hope of pecuniary advantage, they would remove from that class of practitioners, the principal motive to intrude themselves upon the educated members of that honorable profession. And the court entertain no doubt that it was the design of the legislature, not only to take away all right of action for such services, but to make them, when rendered, absolutely gratuitous. Such being the effect of the statute, it is obvious the mere repeal of the statute could give no right of action for past services. It needed something more than to remove an impediment. There must be life infused, and a course of action *created*, which before did not *exist*. This was not done by the repeal of the statute and could not legally and constitutionally have been done by a positive enactment even. It is not competent for the legislature, even, to create an obligation out of a by-gone transaction, which, at the time of its occurrence, all parties understood to be and was strictly gratuitous.

If this had been the repeal of a statute of limitations, which only interposes an impediment to the recovery, or if it had been the repeal of the statute against frauds and perjuries, which provides that "*no action shall be maintained*" upon certain contracts, unless reduced to writing, leaving the contracts themselves in force, for certain purposes, it might have merited a different consideration.

Judgment affirmed.