CITIZENS' STATE BANK OF NEWMAN GROVE V. LARS I. NORE.

FILED JANUARY 8, 1903.   No. 11,893.

Commissioner's opinion, Department No. 1.

1. Negotiable Instrument: CONSTRUCTION OF STATUTE: BONA-FIDE PURCHASER. In this state a statute will not be construed so a• to make a negotiable instrument void in the hands of a bona-fide purchaser, unless the act specifically so declares.

2. Promissory Note: CONSIDERATION: UNLICENSED PRACTITIONER. A note given for medical services by an unlicensed practitioner may be recovered on by a bona-fide purchaser, notwithstanding the provisions of chapter 55 of the Compiled Statutes, prohibiting the practice of medicine without a license.

ERROR from the district court for Boone county. Action by innocent purchaser upon promissory note given for medical services. Plea that payee was not a legally qual ified physician. Note held void. Tried below before THOMPSON, J. Judgment for defendant. *Reversed.*

*Needham & Doten,* for plaintiff in error.

*H. C. Vail, contra.*

LOBINGIER, C.

This is an action on a promissory note, payable six months after date, given by the defendant in error to one F. N. Brett for medical services rendered to the former's wife. At the time of the excution of the note, and as a part of the same transaction, Brett executed and delivered to defendant in error the following instrument:

"AMERICAN MEDICAL AND SURGICAL INSTITUTE,
"For the Treatment of All Chronic, Private and Nervous Diseases, both Medical and Surgical.
                    "ALBION, NEBR., Sept. 7, 1898.
"Received of L. Nore twenty-two dollars, for which I hereby agree to treat L. Nore's wife for three months until cured. To furnish medicine and apparatus deemed neces-

Syllabus by court; catch-words by editor.

sary by me to bring about the best possible results. And to return note at end of specified time if no cure is effected and to give an extension of time if needed.

"$22.00. F. N. BRETT."

On the day after its receipt Brett went to the banking-house of plaintiff in error at Newman Grove and negotiated a sale of the note, through the cashier, at a discount of ten per cent. Brett was a stranger in the town and the cashier had seen him only once before, but there is no evidence that the cashier or any of plaintiff in error's officers or agents had any knowledge or notice of the purpose for which the note was given. The note not being paid at maturity, plaintiff in error brought this action thereon, and defendant in error answered, alleging that Brett was not a licensed physician, that the execution of the note had been induced by fraud, and that the consideration had failed. On the trial the county clerk testified that his office contained no record, as provided by chapter 55, article 1,* of the Compiled Statutes, of any certificate authorizing Brett to practice medicine, and no evidence was offered indicating that such certificate had ever been issued. After the introduction of evidence, plaintiff moved for a peremptory instruction, which was refused. The jury returned a verdict for the defendant, upon which judgment was rendered, and plaintiff brings the case here by petition in error.

Defendant in error relies principally on *Larson v. First Nat. Bank of Pender,* 62 Nebr., 303. In that case the statute under which a bona-fide purchaser was denied recovery on a note provided that any conveyance of lands allotted to the Indians, "or any contract made touching the same * * * shall be absolutely null and void."† In the case at bar the statute contains no express declaration of this kind. The legislation which defendant in error invokes to support his position may be summarized as follows: Chap-

---

* Compare Cobbey's Annotated Statutes, sec. 9416 *et seq.*

† U. S. Statutes at Large, vol. 24, p. 389, ch. 119, sec. 5.

ter 55, article 1, of the Compiled Statutes, makes it the duty of all persons desiring to practice "medicine, surgery or obstetrics" in this state to obtain a certificate from the state board of health and to file the same with the clerk of the county in which they desire to practice. Section 15 provides: "No person shall recover in any court in this state any sum of money whatever for any medical, surgical or obstetrical services unless he shall have complied with the provisions of this act and is one of the persons authorized by this act to be registered as a physician." Section 7 declares it to be unlawful for any person to practice in any of these lines without first obtaining and registering such certificate; and section 16 makes it a misdemeanor to so practice, and imposes a fine therefor. It will be seen that none of these provisions declares a contract for medical services by an unlicensed practitioner to be void. Indeed, while section 15 provides that "no person shall recover," the latter part of the section indicates that this prohibition is limited to the practitioner himself.

It is urged that by making the unlicensed practice of medicine a crime, the legislature has by implication declared void all contracts growing out of such practice, and we are cited to *Snoddy v. Bank,* 88 Tenn., 573. There a contract to deal in futures was held to be included within the statute against gaming, and the court said (p. 576): "By the great weight of authority, notes given in consideration of a contract against morals, public policy, and public statutes are void in any hands," and then added, "Perhaps there are no exceptions when, in addition, the transaction is also criminal." But in *Sondheim v. Gilbert,* 117 Ind., 71, and *Crawford v. Spencer,* 92 Mo., 498, the gaming statute was held not to apply to such transactions. There are, indeed, authorities elsewhere which tend to support the contention of defendant in error. More than two centuries ago, Lord Holt said, in the leading case of *Bartlett v. Vinor,* Carthew [Eng.], 251, 252: "Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute, is a void contract, though

the statute itself doth not mention that it shall be so." In *Cope v. Rowlands,* 2 M. & W. [Eng.], 149, 157, Baron Parke observes: "It is perfectly settled, that where the contract which the plaintiff seeks to enforce, be it express or implied, is expressly or by implication forbidden by the common or statute law, no court will lend its assistance to give it effect." See, also, *Columbia Bank and Bridge Co. v. Haldeman,* 7 W. & S. [Pa.], 233; *Holt v. Green,* 73 Pa. St., 198; *Johnston v. McConnell,* 65 Ga., 129; *Conley v. Sims,* 71 Ga., 161.

Were the question *res nova,* therefore, in this jurisdiction, we might be inclined to regard defendant in error's argument as entitled to great weight. But the question is not *res nova* here. The precise question was before this court in *Smith v. Columbus State Bank,* 9 Nebr., 31, and decided adversely to that contention. The case last cited was an action on a note whose consideration was the compounding of a crime, an act forbidden and made a misdemeanor by section 177 of the Criminal Code. It was contended there, as here, "that when a statute inflicts a penalty for doing an act, such act is unlawful, though not in terms prohibited or declared to be illegal, and any contract, the consideration of which is founded upon the doing of such an act, is void." This court, however, adopted the contrary view, and in doing so overruled on that point, *Kittle v. DeLamater,* 3 Nebr., 325; and COBB, J., in delivering the opinion, said: "In my view of the law, in order to prevent a recovery in the case stated in the above exception, the case must come within some statute expressly declaring notes given for such consideration void." This case was cited and followed in *Wortendyke v. Meehan,* 9 Nebr., 221, and has not since been qualified or overruled. Indeed, we are not asked to overrule it now, nor would we be inclined to do so. After having stood for almost a quarter of a century as the law of this state, we think it far better to adhere to its doctrine than to unsettle the law by adopting a different rule, even though it might be more in accordance with the weight of authority elsewhere.

Much is said concerning the policy of the statute and the evils which are likely to result from allowing contracts to be enforced which are contrary to its purpose and spirit. We fully recognize the importance of such legislation as the medical act. It embodies a fixed and time-honored policy, of the most vital concern to the state and its people. But it may well be questioned whether the evils consequent upon the free circulation of notes given for services of unlicensed practitioners could be more serious than the derangement of business resulting from a rule that would make all such notes void in the hands of innocent purchasers. It must be remembered that instruments like these have no earmarks, and when once it is understood that a limited and indistinguishable class of them is deprived of the virtues of negotiability, a step is taken toward casting the taint of suspicion upon all. Moreover, the medical act has never, so far as we have been able to ascertain, been construed to have that effect upon negotiable paper. Legislation of this character is not recent or even modern. As early as 1511, parliament passed an act* requiring practitioners of surgery in London and vicinity to be examined and licensed by the college of surgeons, and imposing a penalty for non-compliance. In *Gremaire v. Le Clerc Bois Valon* (1809), 2 Camp. [Eng.], 143, this ancient statute was set up as a defense to an action for surgical services, but it was held insufficient, even as between the parties, and recovery was allowed. From the standpoint of public policy, as well as that of *stare decisis,* we are of the opinion that the medical act furnished no defense as against plaintiff in error in this action. And since the other defenses were such as would be valid only between the original parties, we think the court should have directed a verdict as asked, and we recommend that the judgment be reversed and the cause remanded for further proceedings according to law.

HASTINGS and KIRKPATRICK, CC., concur.

* 3 Henry VIII., ch. 11, sec. 1.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.

NOTE.—*Unlicensed Physicians—Right to Recover for Services.* The statutes of the following states expressly provide that any physician practicing unlawfully shall not be permitted to recover for services: Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Nebraska, North Carolina, Rhode Island, Vermont, Virginia and Wisconsin.

The courts of the following states have declined to aid unlicensed physicians in recovering fees for services: Alabama, California, Louisiana, Massachusetts, North Carolina, New York, Tennessee and Texas. This is upon the principle that no recovery can be had in a court of justice for performing an act which is unlawful, or which is prohibited by statute. *Roberts v. Levy*, 31 Pac. Rep. [Cal.], 570, not published in California reports; *Dickerson v. Gordy*, 5 Robinson [La.], 489, but it is held in this case that, the defendant having employed plaintiff, the burden is upon him to show that plaintiff was not licensed; *Spaulding v. Alford*, 1 Pick. [Mass.], 33; *Fox v. Dixon*, 12 N. Y. Supp., 267; *Haworth v. Montgomery*, 91 Tenn., 16, 18 S. W. Rep., 399; *Kenedy v. Schultz*, 6 Tex. Civ. App., 461. Alabama and Kansas have held that an unlicensed physician could not even recover for medicines furnished. *Harrison v. Jones*, 80 Ala., 412; *Underwood v. Scott*, 43 Kan., 714, 23 Pac. Rep., 942.

A court of Missouri has held that an unlicensed physician may recover for services. That court points to the distinction between offenses *mala in se* and *mala prohibita*, placing the practicing by an unlicensed physician in the latter category. *Smythe v. Hanson*, 61 Mo. App., 285. Chief Justice Ruffin of the supreme court of North Carolina severely criticises this distinction as unsound. *Sharp v. Farmer*, 4 Devereux & Battle [N. Car.], 122. The courts are divided on the question of what effect, if any, the repeal of the disqualifying act has upon the physician's right to recover for services unlawfully performed before the repeal. One theory is that the law was not designed to prevent the debt from accruing, but to prevent the enforcement of the obligation; in other words, it pertains not to the contract but to the remedy; and so when the statute is removed, the unlicensed physician may recover. *Hewitt v. Wilcox*, 1 Metcalf [Mass.], 154. Other states have held such contracts void in their inception. *Puckett v. Alexander*, 102 N. Car., 95, 3 L. R. A., 43, 8 S. E. Rep., 767; *Bailey v. Mogg*, 4 Denio [N. Y.], 60; *Nichols v. Poulson*, 6 Ohio, 306; *Warren v. Saxby*, 12 Vt., 146; *Quarles v. Evans*, 7 La. Ann., 543.—W. F. B.