STOCKMEN'S STATE BANK, APPELLEE, v. H. G. FISHER, APPELLANT.

FILED JULY 7, 1921.    No. 21733.

1. **Bills and Notes:** BONA FIDE PURCHASER: INSURANCE PREMIUM NOTE. Where the statute provides that "it shall be unlawful for any company or agent thereof to hypothecate, sell or dispose of a promissory note, received in payment for any part of a premium on a policy of insurance applied for under the provisions of this chapter, prior to the delivery of the policy to the applicant" (Rev. St. 1913, sec. 3291), and it appears from the testimony that the applicant for insurance executed and delivered his note to the agent for the insurance company for the premium therefor, which agent almost immediately, and before the policy of insurance had

been delivered to the applicant, sold and transferred said note to the plaintiff bank, with full knowledge on the part of said bank of the purpose for which said note had been given, and that the policy, for the premium on which said note had been given, had not been delivered to the maker of said note, *held*, that plaintiff was not a *bona .fide* holder of said note and could not recover thereon.

2   Cases Distinguished. The cases of *Citizens State Bank v. Nore*, 67 Neb. 69, and *Bank of College View v. Nelson*, ante, p. 129, referred to in the opinion, commented upon, and distinguished.

APPEAL from the district court for Dawson county: HANSON M. GRIMES, JUDGE. *Reversed.*

*W. A. Stewart* and *John H. Linderman*, for appellant.

*George C. Gillan*, contra.

Heard before MORRISSEY, C.J., FLANSBURG and ROSE, JJ., DICKSON and TROUP, District Judges.

TROUP, District Judge.

This is an action upon a promissory note for $165.75, which plaintiff alleges was executed and delivered to one T. A. McCrystal on April 30, 1919, due September 1, 1919, and by McCrystal sold and transferred to the plaintiff, in due course, for a valuable consideration, and without notice of any defense to the same. The note not having been paid by the defendant when due, plaintiff prays judgment for the amount of said note and interest.

The defendant, answering, denies that plaintiff is the owner of the note in suit, and denies that he is indebted to the plaintiff in any sum whatever, but alleges that the note in question was given by the defendant to one T. A. McCrystal, as the agent of a certain hail insurance company, and in payment of a premium on a policy of insurance to be issued by said company to the defendant against damage by hail; that on the same day on which said note was given said McCrystal sold and delivered the same to the plaintiff; that at the time of the sale and delivery of said note by McCrystal to the plaintiff the said policy of insurance had not been delivered to the

defendant, all of which the plaintiff well knew at the time it purchased said note; that at the time defendant made application for said insurance he informed Mc-Crystal that he already had a certain amount of insurance on his crops, whereupon McCrystal expressed some doubt as to whether further insurance could be contracted for, but that he would receive defendant's application subject to the acceptance of the same by the company; that the defendant was never informed by any one that said application had ever been accepted until after the crops professed to be protected by said insurance had been harvested and said note became due; that said defendant never received a policy for said insurance at any time; that the attempted transfer of said note was unlawful and in violation of the statute of this state, and the defendant invokes said statute as a complete defense to this suit. The reply of plaintiff denies all new matter pleaded in the answer. On a trial of the case to the court, without a jury, the court found for the plaintiff and awarded judgment for the full amount of said note, with interest and costs. A motion for a new trial having been made and overruled, the defendant appeals.

The statute referred to in defendant's answer is as follows: "It shall be unlawful for any company or agent thereof to hypothecate, sell or dispose of a promissory note, received in payment for any part of a premium on a policy of insurance applied for under the provisions of this chapter, prior to the delivery of the policy to the applicant." Rev. St. 1913, sec. 3291.

The undisputed evidence shows that on April 30, 1919, on solicitation therefor by one McCrystal, an agent for a certain hail insurance company, the defendant gave to McCrystal an application for a certain amount of hail insurance upon defendant's growing crops, upon which some insurance already existed; that, because of some doubt expressed as to whether the insurance company would accept the application for the increased insurance, McCrystal stated to the defendant that he would

receive the application subject to the company's acceptance of the same; that at the same time the defendant executed and delivered to McCrystal the note in suit; that on the same day, or the day following the giving of the note and application to McCrystal, and before the application had been accepted by the insurance company, or a policy of insurance delivered to the defendant, McCrystal sold and disposed of defendant's note to the plaintiff herein.

Under these undisputed facts, the act of McCrystal in selling and disposing of this note to the plaintiff was a direct and positive violation of the statute above quoted, and constituted the transaction an utterly illegal and void one, so far, at least, as McCrystal is concerned. We assume that this much must be and probably is conceded by the plaintiff. So that the only question left in dispute, and the only one for us to determine, is, did the plaintiff purchase and receive the transfer of said note from McCrystal under such conditions and circumstances as will entitle it to recover thereon?

There are some other facts practically undisputed which apply to the plaintiff's participation in the selling and purchasing of this note. These are that the plaintiff knew, before and at the time it purchased this note from McCrystal, that the policy of insurance, the premium for which this note was given, had not been delivered to the defendant, for plaintiff bought it either on the very day or the day following its execution and delivery by the defendant to McCrystal. In the very nature of things Ralston, the president of the plaintiff bank, and who represented the bank in this transaction, knew that it was a practical impossibility for the policy to have been executed and delivered to the defendant before that time. Besides, there is conclusive evidence that Ralston had actual knowledge of and understood the fact that the policy had neither been issued nor delivered to anybody at the time he purchased this note, for he testified that he was familiar with the business of writing hail insurance,

and had, himself, much experience as a solicitor, and knew that a hail insurance company would not send a policy to the insured until the cash for the premium had been received by it, and that one of the reasons why he purchased the note was to furnish to McCrystal the cash to send this company in payment for this and other policies.

Under these facts and circumstances, therefore, can plaintiff claim it took the note free of its infirmity and recover thereon regardless of the situation? If it did and can, then it was folly to have written this provision into the statutes, for to sanction such a transaction would defeat the sole and only purpose and object of the statute, namely, to prevent irresponsible insurance companies and their agents from realizing on the obligations of applicants for insurance before delivery of the policies, and without giving them the protection contracted for.

It is said the statute does not inveigh against the purchaser of a note thus hypothecated, but against the seller only. It is true the statute does not, in express terms, make the act of purchasing a note, under the circumstances stated, unlawful. Nevertheless, plaintiff, in taking the part it did in the transaction, certainly violated the spirit of the law. As said in the defendant's brief, there could be no seller without a purchaser, so that when plaintiff purchased said note he knew McCrystal, the holder thereof, had no lawful right to sell it, and that it was a direct violation of the written statute for him to do so. With full knowledge of this fact, plaintiff actively aided and abetted McCrystal in the commission of the unlawful act, and without whose aid the unlawful act could not have been committed. In our opinion such an act on the part of the plaintiff is an assault upon the law, as well as upon good morals, whether a particular statute made it so or not, which this court will not sanction nor encourage by aiding the

one so offending to recover on an alleged cause of action based solely upon the unlawful transaction.

"The maxims 'Ex turpi causa non oritur actio' and 'Ex dolo malo non oritur actio,' founded as they are on sound morals, have for a long time been applied by courts in the practical administration of justice. Under the doctrine expressed in these maxims it has been said that no court will allow itself to be made the instrument of enforcing obligations alleged to arise out of a contract or transaction which is illegal. The rule rests upon the broad ground that no court will allow itself to be used when its judgment will consummate an act forbidden by law. * * * The general rule that no action can be based on an illegal contract is therefore not open to question." 6 R. C. L. 816, sec. 215. In *Rudolph v. Winters*, 7 Neb. 125, it is said: "Whenever a claim is bottomed on an immoral or illegal transaction, no right whatever can be founded upon such contract which the law will sanction or the courts maintain."

The plaintiff cites the case of *Citizens State Bank v. Vore*, 67 Neb. 69, as authority for the contention that plaintiff has the right to recover on the note in suit. We think the case is not in point. The bank, in the case cited, had no knowledge of any infirmity in the note purchased. In the opinion it is said: "Brett (the seller of the note) was a stranger in the town and the cashier had seen him only once before, but there is no evidence that the cashier or any of plaintiff in error's officers or agents had any knowledge or notice of the purpose for which the note was given." And, therefore, the court held the purchaser to be a *bona fide* holder. In the case at bar, however, the plaintiff bank had full and complete knowledge of the infirmity of the note purchased, and therefore was not a *bona fide* holder, neither was it an innocent purchaser under the negotiable instruments act. Rev. St. 1913, sec. 5374.

It may, perhaps, be proper here to call attention to the case of the *Bank of College View v. Nelson, ante,* p. 129

In that case this court held, through ROSE, J., delivering the opinion: "As a general rule, courts will not refuse to enforce a bank's contract for the loan of money, or disallow damages for a breach thereof, merely because the amount lent exceeds 20 per cent. of the capital and surplus, notwithstanding a statute penalizing the banker for exceeding that limit." In the body of the opinion it is said: "In limiting the amount of an individual loan to 20 per cent. of the capital and surplus and in directing punishment for exceeding that limit, the statute established a rule for the government of the bank."

The statute in the case referred to was not enacted for the particular purpose of protecting the borrower, but as "a rule for the government of the bank." Here, in our opinion, lies an important distinction between the case referred to and the one at bar. The statute in the case at bar was evidently enacted for the express purpose of protecting the maker of a note, executed under the circumstances indicated, who had no part in its unlawful transfer, yet who may be grossly defrauded by such transfer except as he is protected by the statute.

We think the court erred in rendering a judgment for the plaintiff, and the same is

REVERSED.