STATE BANK, APPELLEE, V. J. S. HOUSE, APPELLANT.

FILED JUNE 8, 1926.   No. 23806.

1. **Bills and Notes:**   BONA FIDE PURCHASER:   BURDEN OF PROOF.
By section 7898, Comp. St. 1922, it is declared unlawful to sell
or dispose of a promissory note given for any part ·of the
premium for an insurance policy prior to delivery of the policy;
and by section 4670 the burden is placed upon a purchaser con-
trary to the statute to prove that he acquired the title as a
holder in due course. *Held*, (1) that before plaintiff can re-
cover in such case it must appear affirmatively that he acted in
good faith; (2) it is sufficient to defeat the plaintiff if there
is lack of evidence showing good faith.
2. **Evidence** examined, and *held* insufficient to show good faith in
the purchase of the note in suit.

APPEAL from the district court for Antelope county:
WILLIAM V. ALLEN, JUDGE. *Reversed and dismissed.*

*Lyle E. Jackson,* for appellant.

*S. D. Thornton* and *F. L. Putney,* contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, GOOD,
THOMPSON, and EBERLY, JJ., and REDICK, District Judge. ·

REDICK, District Judge.

This is an action upon a promissory note given by the
defendant for the first premium upon a policy of insurance.
The note was dated October 9, 1919, due April 1, 1920, pay-
able to one George Fowler, for $177.04, and was sold the
same day to plaintiff for full value.  Defendant admits the
execution of the note, but alleges want of consideration and
fraud, and denies that plaintiff purchased the same in good
faith.

The facts are not in dispute.  Fowler secured from de-
fendant an application for life insurance, took the note in
suit in payment of the first premium, and on the same
day sold it to plaintiff; the application was never forwarded
to the insurance company and the policy never issued; in
fact, the whole transaction was a fraud on the part of
Fowler.  The note was purchased by plaintiff bank under

the following circumstances: Earlier in the day Fowler had procured at the bank a blank note, and late in the afternoon returned with it duly executed, and offered it for sale to the bank. The cashier of the bank asked what the note had been given for, and was told for life insurance premium. He then asked if the policy had been delivered, and was told that it had been. Without further inquiry or investigation he purchased the note for the bank, paying full value. The cashier had seen Fowler before, but had no acquaintance or conversation with him until the purchase of the note. The maker was a well-to-do farmer living five miles from town, had a telephone in his house, and the cashier had known him about 15 years.

Upon the evidence the trial judge directed a verdict for plaintiff, and from a judgment thereon defendant appeals.

The statutes provide that it shall be unlawful to sell or dispose of a promissory note given in payment of a premium on a policy of insurance prior to the delivery of the policy. Comp. St. 1922, sec. 7898. A holder in due course is defined as one who took the note in good faith, and for value, without notice of any defect in the title of the person negotiating it (section 4663) ; and when the title is shown to be defective the burden is upon the purchaser to prove that he acquired title as a holder in due course (section 4670).

Considering these provisions, did the learned district judge err in directing a verdict for plaintiff? The burden being upon the plaintiff to establish good faith, it was at least a question for the jury whether that burden had been sustained under the circumstances shown, if the evidence justifies an inference either of good or bad faith, and it is inaccurate to say that the intervention of a jury is required only when questions of facts are controverted, for different inferences may sometimes be drawn by reasonable minds from conceded facts. If however only one inference is proper, it is a question of law for the court.

In *Riverton State Bank v. Walker,* 113 Neb. 718, following *Norwood v. Bank,* 77 Neb. 205, we held: "It is not sufficient to show that it was taken under circumstances

which might excite suspicion in the mind of a prudent man, but it must be shown that the indorsee took the paper under circumstances showing bad faith or want of honesty on his part." Stated differently, and in view of the burden resting upon the plaintiff, it *is* sufficient if there is lack of evidence showing good faith. Or, again, before plaintiff may recover in such case, it must affirmatively appear that he acted in good faith.

The plaintiff knew that this note could not be lawfully transferred unless the policy had been delivered. If he had purchased without any effort to ascertain that fact, he would not be protected. Therefore, it was incumbent upon him to make a *bona fide* attempt to ascertain the truth.

The evidence of good faith offered by plaintiff is that he purchased for value, before maturity, and that, knowing the note was for an insurance premium, and that it could not be lawfully transferred before delivery of the policy, he asked the payee, a perfect stranger, if such delivery had taken place, and relied upon his affirmative answer without further inquiry.

Is this sufficient evidence of good faith to authorize a judgment which would allow the consummation of a fraud? We think not. It has been said: "Good faith in interpretation means that we conscientiously desire to arrive at the truth, that we honestly use all means to do so," quoted in *Hilleary v. Skookum Root Hair Grower Co.*, 4 Misc. (N. Y.) 127. Does one who is honestly seeking the truth apply to a person who, if the truth were known, would be defeated in the transaction? Would he be justified in relying upon information obtained from such a source? And, finally, may we honestly refrain from using the means at hand and known to him, viz., inquiry of the maker?

These propositions all demand negative answers. If such conduct is sufficient to warrant an inference of good faith, the requirement of the statute might as well be dispensed with. It rather justifies and requires the contrary. Not only is there a lack of evidence to show good faith, but such gross negligence appears as to permit an inference

of bad faith. The expectation that pure water may be obtained from a polluted source is doomed to disappointment and neglect of known sources of truth is no excuse for ignorance.

"Every one must conduct himself honestly in respect to the antecedent party when he takes negotiable paper, in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not wilfully shut his eyes to the means of knowledge which he knows are at hand * * * for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith."

It follows that the court erred in directing a verdict for plaintiff, and the judgment must be reversed and case dismissed.

REVERSED AND DISMISSED.

ROSE, J., dissenting.

It seems clear to me that the opinion and the judgment of the majority are at variance with the law applicable to the undisputed facts. I think the decision enlarges the provisions of the statute that makes it unlawful for any company or its agent to sell a premium note before delivery of the insurance policy. I am unwilling, therefore, to allow the decision to go unchallenged, though I concede that the references in the opinion to the testimony, so far as they go, accurately reflect the record.

The note in controversy was dated October 9, 1919, and was payable April 1, 1920. It was a premium note for $177.04. It bore the genuine signature of defendant J. S. House, as maker. It was not payable to an insurance company. George Fowler was payee. He took the note to the State Bank, plaintiff, October 9, 1919, and offered it for sale. He indorsed it by writing his name on the back of it. Plaintiff bought it for value. It remains unpaid. Plaintiff, claiming to be a purchaser in good faith, brought the present action to collect the principal and interest. The theory of the defense was that plaintiff was not a purchaser in good faith, and that there could be no recovery

on the note because it had been given to Fowler for an insurance premium before delivery of the policy. There was a trial on these issues and the district court directed a verdict for plaintiff. Defendant appealed, and the majority reversed the judgment below and dismissed the action, holding that the evidence was insufficient to show good faith in the purchase of the note.

John Lemly, cashier of the State Bank of Tilden, plaintiff, stated positively on the witness-stand that the transactions resulting in the purchase of the note were conducted solely by himself and Fowler, the former acting for plaintiff. Fowler offered to sell the note to the bank. He said, in answer to a question, that it was given for life insurance. Lemly asked him if the policy had been delivered and he said it had. Lemly had no knowledge or information of any infirmity in or defense to the note. He first learned just before or shortly after it matured that defendant claimed to have a defense to it. This was after defendant explained the matter. Lemly had no connection with the insurance company represented by Fowler and did not know when defendant made his application for a policy. These facts were positively told by Lemly under oath and there is not a word of competent testimony to contradict them. Lemly had been a banker for twenty years and his veracity and integrity were not impeached. There was no reason to suspect that he committed perjury to prevent the bank of which he was merely cashier from losing a small amount of money. Under rules of evidence applied to similar commercial transactions for ages the undisputed facts of this record have been universally held sufficient to show good faith in the purchase of unmatured negotiable instruments.

Every day honest, capable men, by means of cash, checks and negotiable notes, pay for insurance on the very day on which the policies are delivered. Why should an honest banker be nonsuited for failure to prove good faith established by uncontradicted evidence merely because he discounted a premium note the day it was executed and de-

livered? Must a banker to whom a premium note is offered for discount by a payee to whom it had been entrusted by the maker suspect that the payee is a rascal? If the maker of a note for insurance may with impunity make it payable to his own fiduciary, not to the insurance company, and deliver it before the policy is delivered, must a person to whom it is offered for discount ascertain at his peril by telephone or other means that the policy has not been delivered, though told by the payee that it has been? Why should the maker of a note, without any responsibility for the consequences, be permitted to ignore the promptings of his own senses and, over his own signature, put into the hands of a knave the means of defrauding innocent persons in the ordinary course of their legitimate business? In reason these questions answer themselves.

Lemly had known defendant for fifteen years or more. He recognized on the note when presented at the bank for discount the genuine signature of defendant. Before him stood the payee who said the policy had been delivered. If defendant entrusted Fowler with the note, why could not plaintiff, knowing that fact, honestly and in good faith believe Fowler when he said the note had been delivered?

The statute making it unlawful to sell a premium note before the insurance policy is delivered does not make the note void, nor prevent its transfer to a purchaser in good faith, nor change the rules of evidence, nor set a new standard for testing the sufficiency of proof to show good faith, nor amend or repeal the negotiable instrument law on the subject of transferring negotiable paper for value before maturity.

What the statute relating to transfers makes unlawful is the selling of a premium note before delivery of the insurance policy. Comp. St. 1922, sec. 7898. No one but the insurer or its agent is penalized for violating the act. No person is punishable criminally except the insurer or its agent. Either or both may be subjected to a fine of $100 or to imprisonment for three months. Comp. St. 1922, sec. 7899. No penalty is imposed on a purchaser either in

good faith or in bad faith. Though plaintiff did not violate any statute, or commit any wrong, or knowingly participate in any unlawful transaction, or commit any fraud or deceive any person, its honest, lawful, business transaction is penalized by the decision of the majority in a civil action to the extent of $177.04, with interest from October 9, 1919, and costs of litigation, thus enlarging the statute and exercising legislative power.

The negotiable instrument act declares:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face:

"Second. That he became the holder of it before it was over-due and without notice that it had been previously dishonored if such was the fact;

"Third. That he took it in good faith and for value;

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Comp. St. 1922, sec. 4663.

This ought to be the law still, notwithstanding the act making it unlawful, punishable by fine or imprisonment, for an insurer or its agent, to sell a premium note before the delivery of the insurance policy. The evidence adduced by plaintiff established without contradiction every necessary element of a purchase in good faith as defined by the negotiable instrument act—a restatement of commercial law based on the business rectitude of centuries.

In a recent opinion by Chief Justice Morrissey, there is a reiteration of the doctrine that a *bona fide* purchaser is not affected by fraud previously committed by a third person. *Farmers State Bank v. Lydick,* 112 Neb. 586.

In a still later opinion by Justice Thompson the following rule applicable to negotiable paper was sanctioned by this court:

"To defeat a recovery thereon it is not sufficient to show that he took it under circumstances which ought to excite suspicion in the mind of a prudent man. To have that effect

it must be shown that he took the paper under circumstances showing bad faith or want of honesty on his part." *Howells State Bank v. Hekrdle,* 113 Neb. 561.

On the issues now under consideration there is nothing beyond mere suspicion, even if there is that, to question positive and uncontradicted evidence of good faith.

In the present case the decision of the majority, as I understand the effect of it, not only extends the statute beyond its own terms, but it overturns a fundamental principle on which a former opinion of this court is based. *Citizens State Bank v. Nore,* 67 Neb. 69.

The peremptory instruction to the jury to render a verdict in favor of plaintiff was also proper under the rule of law that, where one of two innocent persons is defrauded by the wrongs of a third person, the loss should fall on the one who equipped the wrong-doer with the instruments of the fraud. As between the parties to this action, defendant alone was the mischief-maker. He signed and entrusted to a scoundrel the negotiable note in controversy.

I challenge the ruling that the nonsuit against plaintiff cannot be avoided without making ineffective the statute forbidding the transfer of a premium note before delivery of the policy. An affirmance of the judgment below would leave that legislation operative to the fullest extent. Violators of the act would still be subject to fine or imprisonment. One who knowingly bought a premium note before delivery of the insurance policy would be unable to enforce payment.

The only wrongs shown by the record were attributable to Fowler and defendant. The latter executed and put into the hands of the former the implement of fraud. The metaphor based on plaintiff as the source of pollution does the latter great injustice.

The importance of the decision and its harmful influence on legitimate banking and insurance, with the suspicion it will cast on all honest people in need of immediate credit for premiums, prompt this dissent.

GOOD, J., concurs in this dissent.