FIRST NAT. BANK of PRICE v. PARKER et al.

No. 3536.   Decided 20, 1920.   (194 Pac. 661.)

1. BILLS AND NOTES—METHOD OF TRANSFER OF NOTE THROUGH FOREIGN CORPORATION WHICH HAS FAILED TO COMPLY WITH STATE LAW IMMATERIAL. In determining whether Comp. Laws 1917, § 947, relating to the right of a foreign corporation which has failed to comply with the state law to hold title to property,

applies to a note, it is immaterial whether plaintiff has re-ceived the note through indorsement by such a corporation, or whether he has received it by delivery, for the method or medium of transfer will be disregarded in determining plaintiff's right to recover on an instrument transferred to him by such a corporation.

2. CORPORATIONS—STATUTE AS TO RIGHT OF NONCOMPLYING FOREIGN CORPORATION TO SUE OR ACQUIRE TITLE TO PROPERTY MUST BE GIVEN EFFECT. Comp. Laws 1917, § 947, providing that a for-eign corporation which has failed to comply with section 945 shall not be entitled to benefit of the laws relating to corpora-tions, and shall not be allowed to sue, or acquire or hold title to property, and that every contract or transfer made by it shall be wholly void, as to the corporation or its assigns, etc., is susceptible of only one construction, and, the statute being self-construing, the court has no other duty than to give it effect.[1]

3. BILLS AND NOTES—HOLDER OF NOTE THROUGH INDORSEMENT BY FOREIGN CORPORATION FAILING TO COMPLY WITH STATE LAW HELD NOT ENTITLED TO RECOVER. Where a defendant had exe-cuted certain notes payable to himself, indorsed them in blank, and delivered them to a foreign corporation, which has failed to comply with Comp. Laws 1917, § 945, requiring the filing of articles of incorporation and designation of an agent for service of process, and such corporation before maturity for a valuable consideration transferred the notes by indorse-ment to plaintiff, plaintiff *held* not entitled to recover thereon in view of section 947, forbidding a corporation failing to comply with the state law from holding title to property, and making its transactions void as to persons deriving title there-from, notwithstanding Negotiable Instruments Law (Comp. Laws 1917, § 4091), relating to the right of a holder in due course, and section 4094, providing that the maker of an in-strument engages that he will pay it according to its tenor admitting payee's then capacity to indorse.

4. STATUTES—APPARENT CONFLICT BETWEEN TWO STATUTES MUST BE HARMONIZED IF POSSIBLE—OTHERWISE LATER ENACTMENT WILL BE REGARDED AS EXCEPTION TO FIRST. When there is an apparent conflict between two statutes, the court must, if pos-sible, harmonize or reconcile such conflict, but if that cannot

[1] Citing *Booth & Co.* v. *Weigand*, 30 Utah, 140, 83 Pac. 736, 10 L. R. A. (N. S.) 693; *Miles* v. *Wells*, 22 Utah, 55, 61 Pac. 534.

be done, the later statute will be regarded as an exception to or qualification of the prior enactment.

Appeal from District Court, Third District, Salt Lake County; *W. H. Bramel,* Judge.

Action by the First National Bank of Price against H. C. Parker and another. From a judgment of dismissal, plaintiff appeals.

AFFIRMED.

*C. S. Price* and *W. Q. Van Cott,* both of Salt Lake City, for appellant.

*Howat, Marshall, McMillan & Crow,* of Salt Lake City, for respondents.

GIDEON, J.

Respondent Parker executed the notes in question in this suit payable to self, indorsed them in blank, and delivered them to his codefendant, the Utah National Underwriters' Corporation, in renewal of other notes held by said corporation, which were payable direct to the corporation. The consideration for the notes was stock of that corporation. The stock, however, was never delivered to Parker, although issued.

The Utah National Underwriters' Corporation, hereinafter designated corporation, was organized under the laws of the state of Arizona. The corporation at no time complied with the requirements of the statutes of Utah authorizing it to do business within this state. The corporation, before maturity, for a valuable consideration and by indorsement, transferred the notes to plaintiff bank. It may be assumed in determining the questions before this court that the bank was a holder in due course. It is conceded that the corporation was doing business in this state at the time of the execution of the orig-

inal notes, as well as at the time of the execution of the notes upon which suit is brought and at the time of delivery of the same to appellant bank. At least the appellant bank has presented the matter to this court on that theory.

At the close of the testimony both plaintiff bank and defendant Parker moved the court for a directed verdict. One of the grounds of plaintiff's motion was that the evidence was without conflict that the plaintiff was a purchaser of the promissory notes in question before maturity for value and without notice of any defenses, or asserted defenses, or any infirmity in the promissory notes in question. There were other grounds stated. It is, however, unnecessary to refer to them here. The principal ground upon which Parker based his motion was that it conclusively appeared that at the time of the execution of the original notes and at the time of the execution of the renewal notes, also at the time of the sale to plaintiff bank, the corporation was a foreign corporation, and had never complied with the provisions of the statutes of this state authorizing it to do business within this state. The court granted defendant Parker's motion upon the ground specified, and a judgment of dismissal was entered. From that judgment this appeal is prosecuted.

From the foregoing it will be seen that the decisive question on this appeal is whether a holder of negotiable paper, received in due course from a foreign corporation doing business within this state, which corporation has failed to comply with the requirements of our statute necessary to be complied with to authorize it to do business within the state, can enforce payment of such negotiable paper. To be authorized to do business within this state, a corporation organized under the laws of another state is required to file with the county clerk of the county in which the principal office of the corporation in this state is situated a copy of its articles of incorporation, by-laws, and amendments, certified to by the secretary of state of the state under the laws of which the corporation is organized, together with an acceptance of the provisions of the Constitution of this state, and to designate an agent upon whom service may be made. Within 10 days

after filing such articles, etc., with the clerk certified copies thereof must be filed with the secretary of state of Utah. Comp. Laws Utah 1917, § 945. None of these requirements had been complied with by the corporation at the dates in question.

Comp. Laws Utah 1917, § 947, so far as material here, reads as follows:

"Any such corporation failing to comply with the provisions of the section 945 shall not be entitled to the benefits of the laws of this state relating to corporations, and shall not sue, prosecute, or maintain any action, suit, counterclaim, cross-complaint, or proceeding in any of the courts of this state, or any claim, interest, or demand arising, or growing out of, or founded on any contract, agreement, or transaction made or entered into in this state by such corporation or by its assignor, or by any person from, through, or under whom it derives its interest or title or any part thereof; and shall not take, acquire, or hold title, possession, or ownership of property, real, personal, or mixed, within this state; and every contract, agreement, and transaction whatsoever made or entered into by or on behalf of any such corporation within this state, or to be executed or performed within this state, shall be wholly void on behalf of such corporation and its assignees and every person deriving any interest or title therefrom, but shall be valid and enforceable against such corporation, assignee, or person."

Defendant Parker contends, and that was the view taken by the lower court, that that statute is decisive of the rights of the parties, that it being an undisputed fact that the corporation was organized under the laws of Arizona, and that it had not complied with the provisions of section 945, supra, and was doing business within this state, it was therefore incapable of acquiring either title to or ownership in the notes in question. He further contends that the notes were wholly void, not only in the hands of the corporation itself, but in the hands of its assignee or any one deriving any interest or title therein or thereto from said corporation.

It is argued on behalf of appellant that whatever defense the maker, Parker, might have had against the corporation cannot be invoked by him to defeat the payment of these notes in the hands of an innocent holder in due course. The argument is predicated upon certain sections of our Nego-

tiable Instruments Law, to wit, Comp. Laws Utah 1917, §§ 4091, 4094.

Section 4091 reads as follows:

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Section 4094 reads:

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor; and admits the existence of the payee and his then capacity to indorse."

It may be conceded that the notes in question, after indorsement by the maker, were payable to bearer, and that the title and right to the same could be transferred by delivery. It is, upon that theory, contended by appellant that the indorsement at the time of delivery to the plaintiff by the corporation was not essential or necessary for the transfer of the notes to appellant bank, and that by delivery only plaintiff acquired an enforceable obligation against the maker, relieved from any defense that the maker might have had against the corporation. In answer to that, it may be said, as is said by respondent, that whatever might have been the effect of the delivery without indorsement the fact remains that the notes were delivered and transferred by indorsement by the corporation. Independent of that consideration, however, if the plaintiff had any title or right to these notes, that title or right was acquired from this noncomplying corporation. Conceding that the indorsement was unnecessary to transfer title, it must be, it seems to us, indisputable that the title which the plaintiff has was received by the indorsement, or by the delivery, from the corporation. If the statute is to be given the effect that its language seems to imply, and as contended for by respondent, the method or medium of transfer is wholly immaterial. It is, in our judgment, an illogical argument to claim title, as the plaintiff does in this case, by indorsement, and at the same time contend that if the title had been acquired by delivery without indorsement a better or higher right would have

been acquired. If plaintiff can enforce payment of these notes it must be upon the theory that it is a holder in due course, and that the defendant is deprived of any defense by reason of the provisions of the Negotiable Instruments Law, supra.

In our judgment the language of our statute with references to noncomplying foreign corporations is susceptible of but one construction. Its meaning is not   **2** doubtful. Courts uniformly hold that in the application of such statutes there is but one thing to do, namely, enforce the statute as it is.

"Whenever the statute has expressly declared that the contract is unenforceable, that, of course, is the end of the controversy. Such a statute is self-construing, and the court has no other duty than to give it effect." *Booth & Co.* v. *Weigand*, 30 Utah, p. 140, 83 Pac. 736 (10 L. R. A. [N. S.] 693); *Miles* v. *Wells*, 22 Utah, 55, 61 Pac. 534; *Swarts* v. *Siegel*, 117 Fed. 13, 54 C. C. A. 399.

See, also, 8 Cyc. 733.

The appellant has cited in support of its contention decisions from the courts of last resort of several states, but reliance is had particularly upon the construction of what is claimed to be similar statutes by the Supreme Court of North Dakota and Florida. It is claimed that the statutes of those two states are in effect the same as the statute of Utah relating to noncomplying foreign corporations. The North Dakota statute is that any contract made on behalf of a noncomplying foreign corporation shall be wholly void on behalf of such corporation and its assigns, but its contracts may be enforced against such corporation. The word "assigns," as used in that statute, was held by the Supreme Court of that state, in *National Bank of Commerce* v. *Pick*, 13 N. D. 74, 99 N. W. 63, not to include the holder of a negotiable instrument in due course. The court held that such holder "gets all the rights of the payee against the maker, and more. He can recover when the payee could not." The Florida statute also provides that every contract made with such noncomplying corporation shall be void on its behalf and on behalf of its assigns, but shall be enforceable against such corporation. The Supreme Court of that state, in *Commercial National*

*Bank* v. *Jordan,* 71 Fla. 566, 71 South. 760, held that the word "assigns" did not deprive a holder of negotiable paper in due course of his right to enforce payment of the same. It is argued on the part of appellant that, by reason of the decisions of the courts of these and other states upon similar provisions rendered prior to the adoption of the act in question here, the Legislature of this state must be presumed to have been cognizant of such interpretation, and to have enacted the law in question with that interpretation as a guide to the intent and meaning of the enactment. It is therefore further contended that it was not the intent of the Legislature that failure to comply with the provisions of the statute authorizing foreign corporations to do business within this state would nullify the effect of the Negotiable Instruments Law so far as the rights of a holder of such paper in the hands of a bona fide purchaser in due course is concerned. It is also argued that any other construction or interpretation makes the provisions of this act conflict with the Negotiable Instruments Law, as well as conflict with the construction of like statutes by the courts of other states at the date of its enactment. There would be much force to the contention of appellant were it not that our Legislature seems to have enacted the law with intent to obviate and overcome such contemporaneous construction, if it be assumed that the members of the Legislature had that construction in mind at all. The language of the act is not only that a contract shall be wholly void in the hands of the corporation and its assigns, but it goes farther than any of the other statutes relied upon, in that it makes the contract void in the hands of any one obtaining any right or title through or from such noncomplying corporation. No reason is suggested why the legislative intent, as expressed by that language, should not be given effect. If contracts made by or with such corporations and those receiving their interests from or through them are void, such contracts remain void and unenforceable in the hands of every one though he be a bona fide holder.

"Wherever the statutes declare notes void, they are, and must be so, in the hands of every holder; but where they are adjudged

by the court to be so, for failure, or the illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with, or have had notice of the consideration." *Vallett* v. *Parker*, 6 Wend. (N. Y.) 615.

This quotation is approved by the Supreme Court of Indiana in *Voreis* v. *Nussbaum*, 131 Ind. 267, 31 N. E. 70, 16 L. R. A. 45. See, also, 8 C. J. 768; *Plank* v. *Swift*, 8 A. L. R. 309, note, p. 314. The history of the legislation of this state upon the subject of foreign corporations doing business within the state supports the conclusions herein reached and as contended for by respondent. Prior to 1915 the statute provided that a corporation, not organized under the laws of this state, and failing to comply with the law authorizing it to do business in this state, should "not be entitled to the benefits of the laws of this state relating to corporations." In a decision by this court in 1906, *Booth & Co.* v. *Weigand*, 30 Utah, 135, 83 Pac. 734, 10 L. R. A. (N. S.) 693, construing that statute, it was held that the term "benefits" did not include the right to sue, and that a foreign corporation, not having complied with such section, was not thereby precluded from maintaining a suit against a citizen on a contract made in Utah and executed on the part of the corporation, or on claims assigned to it not in the ordinary course of its business. The section was amended to read as quoted, in 1915.

It may be that the enforcement of the statute will, in some cases, work a hardship and an injustice. It may even be that such is the result in this case. But the language of the statute seems to be susceptible of no other construction. It is not the province of the court to inquire into the purposes that influenced the enactment, of the law, except so far as that may be necessary to ascertain the intent of the Legislature. The things sought by its enactment may be twofold: It might have been the intention of the Legislature to prevent foreign corporations from doing business in this state without paying the fees fixed by law to be paid before such corporations shall receive authorization to transact business. It may have been, and probably was, the intent of the Legislature to prevent irresponsible and other foreign corporations from acquiring any rights by contract

in this state without subjecting such corporation to the jurisdiction of the state, and also to protect the citizens of the state from contracts with irresponsible corporations not authorized to do business in the state. To effectively carry into effect such intent, these stringent and drastic provisions were included in the legislation. It will readily be seen that if a corporation such as the one in question here were permitted to take negotiable paper and simply by indorsement or delivery take from the maker the right to defend, the protection sought to be given to the citizens by the law would be, to a great extent at least, defeated. In our judgment no such limited construction should be placed on the statute. *Swinney* v. *Edwards,* 8 Wyo. 54, 55 Pac. 306, 80 Am. St. Rep. 916; *Hanna* v. *Kelsey Realty Co.,* 145 Wis. 276, 129 N. W. 1080, 33 L. R. A. (N. S.) 355, 140 Am. St. Rep. 1075.

Some contention is made that the Negotiable Instruments Act is special legislation; and as it is not repealed by express words in the subsequent act, it should be given effect, even though in apparent conflict with the later enactment. Neither one of the statutes is, strictly speaking, a special law. The Negotiable Instruments Law is a comprehensive enactment, covering all phases of the subject to which it relates; and the same may be said respecting the statute covering the right of foreign corporations to do business in this state. The Negotiable Instruments Law was enacted before the adoption of the act in question. It is the duty of the courts, where there is an apparent conflict between two statutes, if possible, to harmonize or reconcile such conflict. If, however, that cannot be done, then the later statute will be regarded as an exception to or qualification of the prior enactment. *N. Y., N. H. & H. R. R. Co.* v. *Bridgeport Traction Co.,* 65 Conn. 410, 32 Atl. 953, 955, 29 L. R. A. 367; 36 Cyc. 1151.

The appellant has cited in support of its contention the following authorities, with others: *Weir & Craig Mfg. Co.* v. *Bonus,* 177 Ill. App. 626; *First Nat. Bank of Central City* v. *Utterback,* 177 Ky. 76, 197 S. W. 534, L. R. A. 1918B, 838; *Citizens' State Bank* v. *Nore,* 67 Neb. 69, 93 N. W. 160, 60

L. R. A. 737, 2 Ann. Cas. 604; *McMann* v. *Walker*, 31 Colo. 261, 72 Pac. 1055; *Edwards* v. *Hambly Fruit Co.*, 133 Tenn. 142, 180 S. W. 163; 3 R. C. L. p. 1016; note, 5 A. L. R. 1447.

The respondent Parker has cited in support of his position. among others, the following authorities: *Indian Road Mach. Co.* v. *Town of Lake*, 149 Wis. 541, 136 N. W. 178; *Hanna* v. *Kelsey Realty Co.*, *supra*; *Jones* v. *Martin*, 15 Ala. App. 675, 74 South. 761; *Montjoy* v. *Delta Bank*, 76 Miss. 402, 24 South. 870; *Perry Sav. Bank* v. *Fitzgerald*, 167 Iowa, 446, 149 N. W. 497; *First Nat. Bank* v. *Hall*, 31 Idaho, 167, 169 Pac. 936; *Voreis* v. *Nussbaum*, 131 Ind. 267, 31 N. E. 70, 16 L. R. A. 45.

The judgment of the district court is affirmed, with costs.

CORFMAN, C. J., and FRICK, WEBER, and THUR-MAN, JJ., concur.