[S. F. No. 13367. In Bank.—December 30, 1930.]

PERKINS MANUFACTURING COMPANY, Appellant, v. CLINTON CONSTRUCTION COMPANY OF CALIFORNIA, Respondent.

Gaylord & Smith, Willard P. Smith and W. L. Southwell for Appellant.

Ernest K. Little for Respondent.

THE COURT.—This case involves an interpretation of certain provisions of the law dealing with foreign corporations never before passed upon by the courts of this state. Plaintiff is a foreign corporation, organized under the laws of the state of Minnesota, while defendant, as its name implies, is a California corporation. On November 20, 1923, plaintiff entered into a written contract with defendant, by and through its duly authorized California agent, whereby plaintiff agreed to "furnish and install all steel rolling doors" at a specified price in a certain building then being constructed by defendant in California. The contract was entered into in California, and, at least as far as performance by plaintiff was concerned, was to be performed here. The doors were duly and properly installed by the California agent of plaintiff, and accepted by defendant. The latter then issued two checks in the correct amounts as payment for the same, and delivered the checks to the California agent of plaintiff. It appears that the agent cashed the checks and has failed to account to his principal for the

proceeds. Plaintiff contends that the payment to the agent was not authorized.

On August 24, 1925, plaintiff herein commenced an action in the S~perior Court of San Francisco against this same defendant for the full amount alleged to be still due on the doors, relying on the written contract, which is likewise the basis of this present action, and also setting forth a cause of action based on .a common count. The defendant answered, setting up as a defense, payment to the agent, and likewise setting up that the plaintiff had not complied with the statute of this state prescribing the terms and conditions upon which foreign corporations may transact intrastate business in this state. (Stats. of 1915, chap. 190, p. 422, as amended; Stats. of 1923, chap. 443, p. 1034.) That action proceeded to trial on April 21, 1926, and, upon the evidence showing that the plaintiff was a foreign corporation and had not complied with the terms of the above statutes, the court ordered a judgment of dismissal in favor of defendant. In that case the court made a specific finding that the contract involved was a contract dealing with intrastate commerce. No appeal was taken from this judgment, and the same has since become final.

On April 20, 1927, section 1 of the Act of 1915, as amended, said section being the section prescribing the terms and conditions upon which foreign corporations can do business in this state, was repealed. (Stats. of 1927, chap. 221, p. 396.) By a statute enacted the same day, all of the provisions of section 1 of the Act of 1915 were re-enacted as sections 405, 406, 408 and 409 of the Civil Code. (Stats. of 1927, chap. 222, p. 396.) The repeal of the old statute and the re-enactment in the code became effective simultaneously on July 29, 1927.

On September 28, 1927, plaintiff complied with the provisions of the 1927 statute in reference to filing a copy of its articles, etc., and on September 29, 1927, commenced this present action on the written contract, and likewise on an open book account. The answer of defendant denies the allegations of the complaint, and sets up as a defense on the merits payment to the agent. As a special defense, defendant likewise sets up that plaintiff had failed to comply with the provisions of the statute concerning foreign corpo-

rations at the time the contract was entered into. The action proceeded to trial, the court finding for defendant on the merits, and likewise finding that plaintiff had not complied with the statute on the date the contract was entered into, and that the contract was therefore void as to it. From the judgment thus entered, plaintiff prosecutes this appeal.

The theory upon which appellant seeks to evade the effect of the prior adjudication, and the effect of the provisions of the 1915 act as amended, as hereafter set forth, is substantially as follows: Appellant contends that the provisions of the 1915 act, imposing certain penalties on foreign corporations for failure to comply with the provisions of the act, merely rendered contracts entered into in violation of the act voidable and not void; that the penalties imposed merely cut off the remedy of the foreign corporation to enforce such contracts; that it is within the power of the legislature to remove such a disability; that the repeal of the 1915 act in 1927 served to remove this disability; that the repeal operates retrospectively so as to remove disabilities existing before its passage; that the re-enactment of 1927 only has prospective application; that compliance with the 1927 act before suit is all that is required. This argument, although ingenious, is unsound.

Section 1 of the Act of 1915, as amended in 1923, *supra*, provides that every foreign corporation engaged in intrastate commerce in this state, must, as a condition precedent to doing business in this state, file with the Secretary of State and with certain county clerks, certain designated papers and affidavits; it must pay a filing fee, and appoint a process agent. Failure to comply with the provisions of this section renders the noncomplying corporation subject to certain penalties:

1. Such noncomplying corporation is subject to a $500 fine.

2. Such noncomplying corporation is prohibited from maintaining or defending any action or proceeding concerning its property or transactions in this state in the courts of this state.

3. "In addition to the penalty herein provided, every contract made by or on behalf of any such foreign corporation, affecting the personal liability thereof or relating to prop-

erty within the state, shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

It is admitted that appellant had not complied with the terms of this statute on the date the contract was entered into, nor on the date the contract was performed by it, and it is conceded that the contract involved is one in intrastate commerce within the meaning of the above penalty provisions.

The courts of this state have never passed upon the effect of the third penalty provision quoted *supra*, upon contracts coming within its operation. This point will first be discussed without reference to the question as to the effect of the subsequent repeal of the statute.

The law is well settled that a state, by virtue of its police power, may entirely exclude foreign corporations from the right to do intrastate business within its borders, and, therefore, may permit them to do business here upon such conditions or subject to such restrictions as it may see fit to impose. (*Hooper* v. *California*, 155 U. S. 648 [39 L. Ed. 297, 15 Sup. Ct. Rep. 207]; *London etc. Bank* v. *Aronstein*, 117 Fed. 601; *H. K. Mulford Co.* v. *Curry*, 163 Cal. 276 [125 Pac. 236]; *San Francisco* v. *Liverpool etc. Co.*, 74 Cal. 113 [5 Am. St. Rep. 425, 15 Pac. 380]; *Jameson* v. *Simonds Saw Co.*, 2 Cal. App. 582 [84 Pac. 289]; *Black* v. *Vermont Marble Co.*, 1 Cal. App. 718 [82 Pac. 1060].)

The constitutionality of such restrictions as are contained in the 1915 statute is no longer open to attack. All states agree on this point. The decisions of the various states, however, are in substantial conflict on the question as to whether the failure of the corporation to comply with such restrictive statutes before undertaking to do business in the domestic state will render its contract void or voidable, and whether compliance with the statute any time before suit is sufficient. (See annotation in 24 L. R. A. 315; 14A Cor. Jur., p. 1294, sec. 4002; 9 Fletcher's Cyclopedia Corporations, p. 10,027, sec. 5941; 8 Thompson on Corporations, 3d ed., p. 899, sec. 6662 et seq.) This conflict in the decisions is at least partially due to a difference in the language of the statutory or constitutional provisions of the different states.

It will be noted that the California statute imposes three penalties for failure to comply, viz.: $500 fine; prohibition against the maintenance of any action on such a contract; and finally the statute declares any such contract void as to the corporation. The second penalty—the prohibition against the maintenance of an action—has been, in a slightly different form, part of our statute law since long before 1915. Under the former statute (old sec. 406, Civ. Code) it was held that as to transactions included within it, if the defendant failed to plead noncompliance in the answer or before trial, he waived this defense. In other words, under that provision, failure to comply with the statute rendered the contract voidable and not void, and compliance any time before suit was sufficient. (7 Cal. Jur., p. 212, sec. 698; 8 Thompson on Corporations, 3d ed., p. 894, sec. 6659; 9 Fletcher's Cyclopedia Corporations, p. 10,112, sec. 5972.)

In many states the only penalties imposed for failure to comply with the statute are the prohibition against the maintaining of an action and a money penalty. But, as we have seen, California and some other states have seen fit to declare, in addition, that certain contracts of such non-complying corporations, such as the contract herein involved, are void. ■ This the state has an unquestioned right to do. (8 Thompson on Corporations, 3d ed., p. 899, sec. 6662; 9 Fletcher's Cyclopedia Corporations, p. 10,051, sec. 5947; 1 L. R. A. (N. S.) 1041; 4 L. R. A. (N. S.), 688; 40 L. R. A. (N. S.) 857.) Although the point, as stated above, has never been passed on in this state, in other states that have seen fit to declare such contracts void, the decisions are uniform as to the effect of noncompliance. All contracts coming within the prohibition are absolutely void as to the foreign corporation, and no action may be maintained by the corporation thereon. (*Diamond Glue Co.* v. *United States Glue Co.*, 187 U. S. 611 [47 L. Ed. 328, 23 Sup. Ct. Rep. 206]; *In re Springfield Realty Co.*, 257 Fed. 785; *Ashland Lumber Co.* v. *Detroit Salt Co.*, 114 Wis. 66 [89 N. W. 904]; *Indiana Road Mach. Co.* v. *Lake*, 149 Wis. 541 [136 N. W. 178]; *Duluth Music Co.* v. *Clancey*, 139 Wis. 189 [131 Am. St. Rep. 1051, 120 N. W. 854]; *International Text Book Co.* v. *Peterson*, 133 Wis. 302 [14 Ann. Cas. 965, 113 N. W. 730]; *Joseph T. Ryerson & Son* v. *Shaw*, 277 Ill. 524 [115 N. E. 650]; *Hoskins* v. *Rochester Sav. & Loan Assn.*, 133

Mich. 505 [95 N. W. 566]; *Rough* v. *Breitung,* 117 Mich. 48 [75 N. W. 147]; *Barron G. Collier, Inc.,* v. *American Cafeteria,* 215 Mo. App. 182 [256 S. W. 118]; *Parke, Davis & Co.* v. *Mullett,* 245 Mo. 168 [149 S. W. 461]; *First Nat. Bank* v. *Leeper,* 121 Mo. App. 688 [97 S. W. 636]; *Dunn* v. *Utah Serum Co.,* 65 Utah, 527 [238 Pac. 245]; *First Nat. Bank* v. *Parker,* 57 Utah, 290 [12 A. L. R. 1373, 194 Pac. 661]; *Alabama etc. Co.* v. *Talley Bates Const. Co.,* 161 Ala. 396 [50 South. 341]; *Hanchey* v. *Southern Home Bldg. & Loan Assn.,* 140 Ala. 245 [37 South. 272]; *Goodner Krumm Co.* v. *J. L. Owens Mfg. Co.,* 51 Okl. 376 [152 Pac. 86]; *Tripp State Bank* v. *Jerke,* 45 S. D. 448 [188 N. W. 314]; affd. in 45 S. D. 580 [189 N. W. 514].)

In the case of *Ashland Lumber Co.* v. *Detroit Salt Co., supra,* at page 66, the Wisconsin court used the following language, which has often been quoted by other courts: "We must hold that the words, 'shall be wholly void on its behalf, and on behalf of its assigns, but shall be enforceable against it and them' mean just what they say; and, if they (the statutes) are valid, they render the contract in question absolutely void and a nullity, in so far as it is sought to be enforced on behalf of the defendants by way of counterclaim in this action."

In *First Nat. Bank* v. *Parker, supra,* at page 290, the Utah court thus referred to its statute: "In our judgment the language of our statute with reference to non-complying foreign corporations is susceptible of but one construction. Its meaning is not doubtful. Courts uniformly hold that in the application of such statutes there is but one thing to do, namely, enforce the statute as it is. 'Whenever the statute has expressly declared that the contract is unenforceable, that of course is the end of the controversy. Such a statute is self-construing, and the court has no other duty than to give it effect.' "

In those states which have declared the contract void, the decisions are practically uniform that subsequent compliance with the statute in no way enlarges the legal rights of the noncomplying corporation as far as the particular contract is concerned. In other words, subsequent compliance with the statute can have no legal efficacy to change the status of a

contract declared to be wholly void at the time it was entered into.

In *Alabama etc. Co.* v. *Talley Bates Const. Co., supra,* at page 396, the Alabama Supreme Court stated the rule as follows: "That purpose is not accomplished by a filing at the pleasure of the corporation, or when it may be to its interest to appeal to the courts of this state. We may safely affirm that nothing short of a compliance before any business is engaged in or transacted in this state satisfies either the literal requirement of the statute and constitution or their policy."

In *Interstate Const. Co.* v. *Lakeview Canal Co.,* 31 Wyo. 191 [224 Pac. 850, at p. 851], the Wyoming Supreme Court stated the rule as follows, after referring to an earlier case holding such contracts unlawful: "The holding in that case is inconsistent with the contention that a compliance with our law subsequent to the making of an unlawful contract, but before suit is started, avoids the necessity of declaring such a contract void. If a contract, or any business that gives rise to a claim is unlawful, it cannot well be made lawful by anything that is done subsequently. . . . But the courts are agreed, we think, that where the claim sued on arises out of a transaction unlawful by reason of non-compliance with the Constitution or laws, a subsequent compliance has no effect."

See, also, 9 Fletcher's Cyclopedia Corporations, p. 10,112, section 5972, where many cases are cited in support of the above rule.

The situation involved is analogous to that presented by the question as to the validity of acts performed by a corporation while its powers are suspended by virtue of its failure to pay the license tax. The law is settled in this state that a subsequent payment of the tax in no way validates prior transactions. (7 Cal. Jur. 155, sec. 643.) The same result follows in reference to the problem here presented. Subsequent compliance, at least where defendant sets up as a defense the failure to comply at the time the contract was entered into, does not render the contract enforceable by the noncomplying foreign corporation.

We are, therefore, irresistibly led to the conclusion that since the legislature has seen fit to declare such con-

tracts "void" as to the noncomplying foreign corporation, the legislature meant what it said, and such contracts must be deemed to be void, and subsequent compliance cannot validate the same so as to permit the maintaining of any suit thereon by such corporations.

The above analysis would dispose of this appeal, were it not for the fact that the act imposing the penalty was repealed, and simultaneously similar provisions were enacted into the Civil Code. We turn now to a discussion of the problem thus presented.

The new sections added to the Civil Code (secs. 405, 406, 408, 409) contain exactly the same provisions as were contained in section 1 of the repealed 1915 act, with the following exceptions: (1) The order of certain sentences is reversed; (2) the fee required upon compliance with the law is raised from $75 to $100; (3) some repetitious phrases are omitted; (4) various minor changes in the administrative features of the act are provided for; (5) minor changes are provided for in reference to the papers necessary to be filed upon compliance with the statute.

It is to be noted that the provisions in reference to the imposition of the three penalties above enumerated, found in the 1915 act, were re-enacted into the 1927 act without change.

Appellant contends that the penalties imposed by the 1915 act merely cut off its remedy to enforce the contract and that the legislature has power to remove the disability thus imposed, no vested rights being involved. This, appellant contends, the legislature did by the repeal of the law imposing the penalty, the repeal acting retroactively as to the penalty. Appellant therefore contends that since the penalty has been removed and since it has now complied with the provisions of the 1927 act, it may maintain this action.

The result reached by appellant is *non sequitur* for two reasons. In the first place, the whole argument is based upon the premise that the penalties imposed by the 1915 act merely served to render the contract unenforceable and not void, but this premise, we have seen, is incorrect. The contract herein involved was void as to appellant when entered into and performed. The rule in reference to repeal of statutes imposing penalties would seem to have no applica-

tion to a contract rendered void by statute. In other words, we are of the opinion that the repeal of a penalty rendering a contract void, would not serve to revive the void contract.

 However, there is another principle of law that applies to the facts of this case that seems to us conclusive of the facts herein involved. As stated above, simultaneously with the repeal of the 1915 act, the same provisions, slightly modified, were re-enacted into the Civil Code. In other words, there was not a moment in which the repealing act stood in force without being replaced by the new sections added to the code. The correct principle applicable to such a situation was thus stated by the United States Supreme Court in interpreting the repeal and re-enactment of several California statutes in the case of *Pacific Mail SS. Co.* v. *Joliffe,* 69 U. S. (2 Wall.) 450, at p. 458 [17 L. Ed. 805]:

"The new act re-enacts substantially all the provisions of the original act, relating to pilots and pilot regulations for the harbor of San Francisco. It subjects the pilots to similar examinations; it requires like qualifications; it prescribes nearly the same fees for similar services. . . . The new act took effect simultaneously with the repeal of the first act; its provisions may, therefore, more properly be said to be substituted in the place of and to continue in force with modifications, the provisions of the original act, rather than to have abrogated and annulled them. The observations of Mr. Chief Justice Shaw, in *Wright* v. *Oakley,* 5 Met. (Mass.) 406, upon the construction of the Revised Statutes of Massachusetts, which in terms repealed the previous legislation of the state, may with propriety be applied to the case at bar:

" 'In construing the revised statutes and the connected acts of amendment and repeal, it is necessary to observe great caution to avoid giving an effect to these acts which was never contemplated by the legislature. In terms, the whole body of the statute law was repealed; but these repeals went into effect simultaneously with the revised statutes, which were substituted for them, with such modifications as were intended to be made by that revision. There was no moment that the repealing act stood in force without being replaced by the corresponding provisions of the revised stat-

utes. In practical operation and effect, therefore, they are rather to be considered as a continuance and modification of the old laws than an abrogation of those old and the re-enactment of new ones.' ''

The principle has been recognized by the California courts many times. In the *Estate of Martin,* 153 Cal. 225 [94 Pac. 1053], a former succession tax statute was expressly repealed and simultaneously a new succession tax act was passed, containing most of the provisions of the old act. It was contended that since the old act had been repealed, the right of the state to collect taxes accrued thereunder was lost. The court held that the new act should be construed as a continuation of the old, with the modifications found in the new act, stating at page 229: ''These re-enactments come within the scope and effect of section 325 of the Political Code, declaring that, when a part of a statute is amended it is 'not to be considered as having been repealed and re-enacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time they were enacted'. The rule particularly applicable to this case is thus stated in Sutherland on Statutory Construction (2nd ed., sec. 238): 'Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and a re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes place at the same time.' Speaking of a similar case, the Supreme Court of the United States, in *Bear Lake I. Co.* v. *Garland,* 164 U. S. 11 [41 L. Ed. 327, 17 Sup. Ct. Rep. 7], said: 'Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, we think, entirely correct to say that the new act should be construed as a continuation of the old, with the modification contained in the new act'.'' (Citing many cases.) See, also, *Carter* v. *Stevens,* 208 Cal. 649 [284 Pac. 217]; *Riley* v. *Havens,* 193 Cal. 432 [255 Pac. 275]; *Vallejo etc. Co.* v. *Stevinson,* 164 Cal. 221 [128 Pac. 924]; 23 Cal. Jur., p. 699,

sec. 87; *Spokane Eastern Trust Co.* v. *Hart,* 127 Wash. 541 [221 Pac. 615].

The above reasoning appeals to us as applicable here. The new act must be deemed to be a continuance and modification of the old law, and not the complete abrogation of it so as to work the result sought by appellant herein, which, if arrived at, would abrogate the entire policy of this state in reference to foreign corporations as to past offenders. This result was never intended by the legislature. Moreover, it must be remembered that the provisions in reference to penalties for noncompliance are identical in both the old and new statutes and, at least as far as they are concerned, it must be held that the repeal and re-enactment merely operated to continue them in effect.

From the foregoing it follows that the judgment of the trial court holding the contract herein involved void for failure to comply with the provisions of the statute in reference to foreign corporations was and is correct and should be and hereby is affirmed.

Rehearing denied.