[L. A. No. 17435. In Bank.—July 16, 1941.]

Estate of EMELINE CHILDS, Deceased. EMELINE CHILDS DWIGHT et al., Appellants, v. HARRY B. RILEY, as State Controller, etc., Respondent.

Burr & Smith and A: J. Cathcart for Appellants.

James W. Hickey, Inheritance Tax Attorney, and Raymond G. LaNoue, Assistant Inheritance Tax Attorney, for Respondent.

CARTER, J.—This appeal presents a controversy in relation to the rate and method of computation of the inheritance tax payable by reason of property transfers to appellants at death and prior thereto designed to take effect in enjoyment or possession at death. It is conceded by appellants and respondent that both the transfers before death and at death are subject to inheritance tax, those before death taking effect in possession or enjoyment at or after death. (Stats. 1935, p. 1266, sec. 2 (3) [Deering's Gen. Laws, 1937, Act 8495].)

The three appellants are adult daughters of the deceased. The taxable transfers made to them by the deceased prior to her death were as follows: First, in June, 1920, when each of the appellants received property of the value of $15,000; second, on December 13, 1926, when each appellant received property valued at $7,000; and third, on June 20, 1927, when each appellant received property valued at $92,163.51. Thus each appellant received by reason of the *ante* death transfers, property of a total value of $114,163.51. The deceased died on September 24, 1935, and each of the appellants received by her will, after deductions were made, property of the value of $36,909.58. In the probate proceeding on deceased's estate, and pursuant to the report of the Inheritance Tax Appraiser, the court below, by its order here appealed from, fixed the inheritance tax on the transfer of the property to each appellant at $6,225.12. In computing this tax with reference to the exemptions and the rate bracket applicable, the court chose as the figure upon which to make its calculation the total amount of the transfers received by each appellant before and at decedent's death, or the sum of $151,073.09. The four transfers were thus treated as one or as one taxable unit. One exemption of $10,000 was allowed to each appellant, and the rate applied was 1% on the first $25,000, 2% on the next $25,000, 4% on the next $50,000, 7% on the next $14,163.51, and 7% on the next $36,909.58.

It is appellants' contention that the transfer at death of $36,909.58 should have been treated separately from the *inter*

*vivos* transfers and taxed according to the rates provided for in the Inheritance Tax Act of 1935 in effect at the time of decedent's death (Stats. 1935, p. 1266); that the *inter vivos* transfers should have been aggregated, a $10,000 exemption allowed, and the rates fixed at 1%, 2%, 4% and 7% on the amounts above mentioned; and that on the transfer at death an additional exemption of $5,000 should have been allowed and a rate of 2% on $25,000, and 3% on $11,909.58 applied. The total tax on all the transfers to each appellant would thus be $1,826.39 less than that fixed by the court. The basis of appellants' theory is that the rates and exemptions provided for in the 1935 Inheritance Tax Act could apply only to the transfer at death, and that the transfers *inter vivos* must be treated as separate transfers and governed by the law in effect prior to 1935. The rates under the 1935 act are 2% on the first $25,000, 3% on the next $25,000, 4% on the next $50,000, and 7% on the next $100,000.

In general, appellants endeavor to raise the question as to whether taxable transfers *inter vivos* and at death may be aggregated and treated as one transfer occurring at death, with the result that the law with reference to rates and exemptions in force at the time of death is applied, rather than that in effect when the transfers *inter vivos* were made. This includes the further question of whether only one exemption should be allowed. If all the transfers are considered as a single transfer, then, of course, only one exemption would be permitted and the aggregation of the transfers would raise the total value of the property transferred to a point where it, or at least a portion thereof, might reach the higher tax rate brackets, inasmuch as under the general scheme of the inheritance tax laws the rate of the tax increases as the value of the property transferred becomes greater.

Appellants cite and rely upon the cases of *Riley* v. *Havens*, 193 Cal. 432 [225 Pac. 275], and *Estate of Potter*, 188 Cal. 55 [204 Pac. 826], as supporting the proposition that the rate of taxation on property transferred by gift or succession under the inheritance tax laws cannot be lawfully increased or the exemption lowered by the legislature to affect taxable transfers that have been made prior to the enactment of the legislation raising the rates or lowering the exemption, but in view of the theory adopted by the trial court in fixing the tax in the case at bar, it cannot be said that the decision of the trial court violates the rule announced in the above cited

cases. Moreover, these cases were decided prior to the 1935 amendment to the Inheritance Tax Act which would have the effect of changing the rule applicable to transfers subject to the provisions of said act as amended. (Stats. 1935, p. 1266, sec. 2 (10).)

Let us first ascertain precisely what was done by the trial court in the case at bar. It did not, in computing the tax, impose on the transferees all of the tax burden which might have resulted from the aggregation of the transfers, nor did it follow exclusively either the 1935 Inheritance Tax Act or the prior acts. The exemption under the 1935 act, when the transferee is an adult child, is $5,000, rather than the $10,000 allowed by the court. (Stats. 1935, p. 1266, sec. 6.) The rate of taxation under that act for an adult child is 2% on the first $25,000, 3% on the next $25,000, 4% on the next $50,000, and 7% on the next $100,000. (Stats. 1935, p. 1266, secs. 4 and 5.) The rates under the 1917 act are 1% on the first $25,000, 2% on the next $25,000, 4% on the next $50,000, and 7% on the next $100,000. The court applied the exemption provided for by the 1917 Inheritance Tax Act (Stats. 1917, p. 880, secs. 4, 5 and 6 [Deering's Gen. Laws, 1917 Supp. Act 8442]), and as to the rates, it applied the 1917 act to the transfers *inter vivos* and the 1935 act to the $36,909.58 transferred at death, that rate being 7% because the aggregation forced that transfer into the higher rate bracket. In respect to that rate, the result would have been the same upon the application of either of the acts because it is the same under both. However, as appellants point out, the court did aggregate the transfers to the extent of accomplishing two results, of which appellants complain. First, that only one exemption was allowed, to-wit, $10,000, whereas, if the tax on the transfers *inter vivos* and at death had been computed separately, an exemption of $10,000 would have been allowed on the *inter vivos* transfers under the 1917 act, and one of $5,000 on the transfer at death under the 1935 act. Second, that the aggregation caused all of the $36,909.58 transfer at death to fall in the higher rate bracket calling for a 7% tax, rather than computing the tax on that transfer separately and at the primary or lower bracket rates. They concede that the rates applied on the transfer at death should be calculated on the rates provided for in the 1935 act. Appellants then conclude that because of the above mentioned results, the court

gave retroactive effect to the 1935 act, which would render such act unconstitutional. Whether such effect was given, regardless of whether it is proper or improper, depends first upon what changes, if any, were made in the law between the date of the first transfer and the effective date of the 1935 act. We have seen that the rates on the first two $25,000 brackets were increased by the 1935 act from 1% and 2% respectively, to 2% and 3%. The third and fourth brackets of $50,000 and $100,000 respectively remained unaltered at 4% and 7%. The exemption was reduced from $10,000 to $5,000. In respect to the right to aggregate the transfers in computing the tax, section 2 (9) of the 1917 act provided as follows: ''When *more than one transfer* within the meaning of any of the preceding subdivisions (subdivisions dealing with *transfers at death and inter vivos*) of this section has been made, either before or after the passage of this act, by a *decedent* to one person, the tax shall be imposed upon the *aggregate market value of all of the property so transferred* to such person *in the same manner and to the same extent* as if all of the property so transferred were actually transferred by *one transfer.''* (Emphasis added.) The 1917 act was repealed and a new inheritance tax act was enacted in 1921. (Stats. 1921, p. 1500 [Deering's Gen. Laws, 1923, Act 8443].) Section 2 (the section which contains the provision with reference to aggregation) of the 1921 act was amended in 1925 (Stats. 1925, p. 473) and in 1929. (Stats. 1929, p. 1834.) At no time however was the wording of the above quoted portion of section 2 altered or added to in any respect. The rates of taxation and exemptions were not changed until the adoption of the 1935 act. The 1921 act was repealed by the 1935 act, but the 1935 act contains a provision identical with the above quoted provision from the 1917 act with respect to aggregation, with the addition, however, at the end thereof of the words: '' . . . made at the date of the transferor's death and with the value, rates and exemptions as of that date.'' (Stats. 1935, p. 1266, sec. 2 (10).)　　　It should be observed that although both the 1917 and 1921 acts were repealed, the repealing acts were embraced within the new acts covering the same subject matter as the repealed acts. Under such circumstances it cannot be doubted that the new acts were reenactments and that there was a continuation in the new acts of those provisions of the repealed acts which were carried over without alteration into the former. Therefore,

the provision above quoted concerning aggregation remained in force and has continuously been the law since its original adoption in 1917. (*Estate of Martin,* 153 Cal. 225 [94 Pac. 1053] ; *Perkins Mfg. Co.* v. *Clinton Const. Co.,* 211 Cal. 228 [295 Pac. 1, 75 A. L. R. 439].) ▇ It also should be noted that the description of the transfers in the above quoted provision in the 1917 act are those occurring ''either before or after the passage of *this* act.'' The same clause appears in subsequent amendments and the new acts, including the 1935 act. The words ''passage of this act'' refer however not to the passage of the new act or amendment, but rather to the passage of the 1917 act, where the provision originally appeared. (*Greeley* v. *Suey Sing Benev. Assn.,* 28 Cal. App. (2d) 536 [83 Pac. (2d) 54].)

▇ It is clear, therefore, that at the time all the transfers here involved were made, there was statutory authority to aggregate the market value of all the property so transferred, and to impose a tax based on such aggregated value to the same extent and in the same manner as if there had been only a single transfer. That authority has existed continuously since the enactment of the 1917 act, which was prior to the first transfer here involved. Disregarding the provision in the 1935 act, specifying that the aggregated value of all transfers shall be taxed as a single transfer at death, and according to the rates and exemptions then in effect (such provision was not in the 1917 act), it remains only to ascertain what effects may reasonably be said to flow from such aggregation. Certainly it is obvious that the authority to aggregate and impose a tax the same as on a single transfer carries with it at least two results, namely, that several transfers being treated as one and taxed accordingly necessarily means that but one exemption shall be allowed, and that such aggregation would also necessarily result in the aggregate value being such that a higher tax rate bracket would be reached or at least approached. If these results did not follow, the aggregation provision as enacted in 1917 would be meaningless. We see no other purpose to be accomplished by it. ▇ In respect to exemptions, section 6 (6) of the 1935 act provides:

''In computing the tax upon transfers subject to tax . . . the exemptions . . . shall be deducted from the *aggregate* amount of property transferred, and the transfer of the re-

mainder of the property after making such deduction shall be taxed at the rates at which it would have been taxed had no exemption . . . been allowed.'' The import of this provision is that only one exemption is to be allowed on a transfer, and where under the authority to aggregate, several transfers are made one in legal effect, the rule of only one exemption still applies. (See *Estate of Brown,* 196 Cal. 114 [236 Pac. 144], for discussion in passing on the effect on rates and exemptions of statutory authority to aggregate.) Here there was a statute in effect authorizing aggregation at the time all the transfers were made. ▉ From what we have said it is obvious that the trial court did not give retroactive effect to the 1935 act in determining that the aggregated transfers should be considered as a single transfer, for the reason that the court, although treating the transfers as one, applied the rates and exemption existing under the law prior to the passage of the 1935 act, with the exception of the transfer at death where the rates provided for in the 1935 act were applied. Therefore, appellants are not in a position to complain, as they have not been injured by any claimed retroactive operation of the 1935 act with reference to the rates and exemptions provided for therein. The two results above mentioned, namely, the allowance of only one exemption and the raising of the market value of the transfers by aggregation into higher tax brackets, as we have seen, were authorized by prior acts as well as the 1935 act, and the court, having done no more than reach the results contemplated by these acts, there has been no retroactive effect given to any law in the instant case. It cannot be denied that the court in fixing the amount of the tax had authority to do at least what it did. Whether it could have gone farther and applied the exemption and rates provided for in the 1935 act to the aggregated transfers is a matter with which we are not here concerned. The respondent has not appealed from the order of the court fixing the amount of the tax. ▉ Even if it should be held that the clause which was added by the 1935 act (heretofore quoted) providing that the rates and exemptions provided for by the law in effect at the time of death were applicable to the aggregated transfers, and that said act was therefore in violation of the Constitution because retroactive in operation, appellants are not in a position to raise this issue, as such clause was not applied to them and they have not therefore been injured by the retroactive operation of any statute.

 As we understand appellants' argument, they assert that the 1917 provision, by reason of the 1935 addition thereto must necessarily be considered as retroactive as to rates and exemptions and therefore unconstitutional, and that when so considered, the whole authority to aggregate transfers is wiped out. If the portion added in 1935 is unconstitutional because retroactive, it is apparent from what has heretofore been said that it may be separated from the balance of the provision without stripping it of meaning or effect. This would be in accord with the well established rule that a portion of a statute may be declared unconstitutional without affecting the remainder of the act when the result of the deletion of the unconstitutional portion will not make the statute meaningless and it can be said to have been the intention of the legislature to have the act stand with such deletion. The 1935 act contains the customary declaration of legislative intent that the unconstitutionality of a part of the act shall not invalidate the remainder. (Stats. 1935, p. 1266, sec. 24.) Moreover the conclusion urged by appellants does not necessarily follow. The portion of the provision authorizing aggregation and appearing before the 1935 addition, has been, as we have seen, the law ever since 1917 and still was the law after the adoption of the 1935 act. The portion of an amended statute which remains the same as it was prior to the amendment, continues to be the law from the time of its original enactment and any changes or additions are considered as having been enacted at the time of the amendment. (*Carter* v. *Stevens*, 208 Cal. 649 [284 Pac. 217]; *Estate of Martin, supra.*) There was, therefore, a law in effect before and after the 1935 act authorizing aggregation, and it might well be a justifiable assumption that the 1935 addition to the provision and its effect on that provision were intended to operate prospectively only, that is to say, that transfers made after the effective date of the 1935 act could not only be so aggregated as to result in the allowance of a single exemption and a reaching of a higher tax rate bracket, but also that the tax rate and amount of exemption governing would be determined by the law in force at the death of the transferor. Whereas transfers made prior to 1935 would be aggregated to the end that only one exemption would be allowed and a higher rate bracket might be attained, but the rates and exemptions applied would be those provided by prior statutes. So to conclude would be to do

nothing more than state that a law when amended may be effective in its original form as to past transactions and effective in its amended form as to future transactions. It is the general rule that a statute is not retroactive in operation unless the legislative intent to the contrary is clear. (23 Cal. Jur. 629.)

We are not concerned here with a case in which a change in the law subsequent to some of the transfers has resulted in increasing the amount of the tax computed on the total value of all of the property so transferred. In such a case it might be claimed that such change could not affect the prior transfers. But as pointed out heretofore, the rate on the level reached by the aggregation in this case is the same in both the 1917 and 1935 acts. Appellant is not injured and we are not disposed to pass upon a hypothetical case. Nor are we concerned with what formula would have to be applied, that is, the rates and exemptions to be applied, if the rates and exemptions here applicable had been changed between the times of the various transfers, when the transfers are aggregated, because there was no such change. However, there is no difficulty concerning the formula even in such event. The aggregation would fix the rate bracket in which each transfer would fall and the rate at the time of the transfer could be applied. Any changes in exemptions could be apportioned.

The order is affirmed.

Gibson, C. J., Traynor, J., Shenk, J., Pullen, J., *pro tem.,* and Edmonds, J., concurred.

Appellants' petition for a rehearing was denied August 14, 1941.