The UNITED STATES of America for the Use of PAN–CARIBE CONSTRUCTION CO., Plaintiff,

v.

PECO INTERNATIONAL, S.A. and Royal Indemnity Co., Defendants.

Civ. No. 5761.

United States District Court
D. Canal Zone,
Balboa Division.
July 19, 1965.

Henry L. Newell, Balboa, Canal Zone, for plaintiff.

William J. Sheridan, Jr., Balboa Heights, Canal Zone, for Peco International, S. A.

Roy Phillipps, Balboa, Canal Zone, for Royal Indemnity Co.

CROWE, District Judge.

This court held on March 30th, 1965 that the motion of the defendant, Peco International, S. A., for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure was "in time" and could be made and this motion is up for decision.

The plaintiff filed its complaint on June 3, 1964 under the Miller Act against the defendant, Peco International, S. A., and Royal Indemnity Company, the surety on the payment bond executed by defendant for the protection of all persons supplying lumber and materials under the contract involved.

On August 20, 1962 the defendant, Peco International, S. A., entered into a subcontract with Uhlhorn International, S. A., involving the installation of water and sewer lines, which was designated as Contract NBY 31727. Thereafter under the contract the defendant entered into a subcontract agreement with Constructora Atlas, S. A., but this work, instead of being done by Constructora, was done by plaintiff with the approval and knowledge of Uhlhorn International, S. A. and defendant and was accepted by the United States Government.

The plaintiff states that as a result of its work under the contract that the defendant owes it $42,662.46 for lumber and materials, which sum is past due and unpaid. The defendant filed a general denial and thereafter made a motion for judgment on the pleadings under Rule 12(c), as stated, on the basis that the use plaintiff, Pan-Caribe Construction Company "up to and including the date of the filing of the complaint by the plaintiff, and at all times prior thereto" did not hold a license to do business within the Canal Zone and that therefore any contract to which this plaintiff was a party is void. Defendant relies upon Title 2, Section 879 of the Canal Zone Code which reads as follows:

"§ 879. Penalties for violation; validity of contracts

"(a) A corporation which does business in the Canal Zone without having complied with this chapter shall be fined not more than $500.

"(b) Whoever acts as an officer of, or agent for, a corporation which has not complied with this chapter,

shall be fined not more than $100 or imprisoned in jail not more than 30 days, or both.

"(c) Every contract made by or on behalf of such a corporation affecting the liability thereof or relating to property within the Canal Zone is void on its behalf and on behalf of its assigns, but is enforceable against it or them. 76A Stat. 35."

The court in making this decision has taken into consideration that it is dealing with two Panamanian corporations, neither of which is a domestic corporation in the Canal Zone. The defendant corporation, of course, has qualified under the Canal Zone Code to do business in the Canal Zone but the plaintiff corporation has not. Full consideration must be given to geographical and political features. The Canal Zone is a strip of land about 10 miles wide and 50 miles long within the heart of the country of Panama, owned entirely by the United States Government, and no competitive private industry is permitted to flourish here. There are a few banking and shipping industries but no corporate structures are set up in the Canal Zone, and there is no need to protect domestic corporations as there are none. There are no laws for their creation. The entities to be protected by the Canal Zone corporate laws as to licensing and operation are the Canal Zone Government, Panama Canal Company, the military organizations and other branches of the United States Government, and the people resident in the Canal Zone.

In the case at bar the plaintiff was performing a contract of construction for the United States Government, which inspected, approved, and accepted the work with full knowledge that it was dealing with the plaintiff as a subcontractor. The defendant is therefore in its defense stating in effect that plaintiff has done its work but because it is not licensed in this narrow strip called the Canal Zone, it will take advantage of the statute and refuse to make payment. If defendant's position is upheld, it will amount to an unjust enrichment and an injustice.

The Canal Zone Government is a branch of the United States Government and has the duty and obligation to enforce a compliance with Title 2, Section 879 of the Canal Zone Code, as it does the other provisions of the Code, and there is no showing that any move was made upon the part of its authorities, although the contract was for the United States, to require the plaintiff to comply.

There are two schools of thought relative to the construction of provisions like that one in paragraph (c) of Section 879, supra. One group adheres to the theory that there is no recovery as the contracts made by people who have not qualified under the licensing provisions are wholly void.

The State of California, which has been followed a great deal by the Canal Zone by reason of the similarity of the Canal Zone Code provisions to the California Code, and which has words in its corporate licensing section almost precisely like the Canal Zone Code, follows this rule. See Perkins Manufacturing Company v. Clinton Construction Company, 211 Cal. 228, 295 P. 1, 75 A.L.R. 439. This case was the first such case decided by the Supreme Court of California and numerous decisions from other states are incorporated in that opinion. The court said: "Although the point as stated above, has never been passed on in this state, in other states that have seen fit to declare such contracts void and the decisions are uniform as to the effect of non-compliance. All contracts coming within the prohibition are absolutely void as to the foreign corporation, and no action may be maintained by the corporation thereon." Subsequent research in the case at bar indicates that California has continued to adhere to the rule stated in the Perkins case, supra.

The other school of thought is to the effect that where a contract is executed that even though a corporation has failed to qualify, it should have the right to maintain or defend its rights arising un-

der the contract. The general rule is stated in 7 A.L.R.2d at page 258, in paragraph 3:

"In General.

"Except under constitutional or statutory provisions expressly providing otherwise, the rule is quite general that while a contract entered into by a foreign corporation has not complied with the conditions of doing business in the state would be void or voidable while still executory, and so not enforceable by the corporation, the contract, after it has been fully executed, is to be treated as a valid contract, and the corporation may maintain or defend its rights arising under the contract."

■ The Canal Zone statute in question, although using the word "void", when read in its entirety is discovered to mean only that the contract is voidable. The courts have frequently had to make this determination, as shown in 12 Am.Jur., page 507, in paragraph 10:

"Void, Voidable and Unenforceable Agreements.

"Attention must also be directed to the important distinction between void and voidable contracts. Much confusion has resulted from the lack of precision in the use of these terms, particularly from the use of the word 'void' as the equivalent of 'voidable.' Very frequently a contract is said to be void when no more is intended than that it is voidable. A void contract is no contract at all; it binds no one and is a mere nullity. Accordingly, an action cannot be maintained for damages for its breach. It requires no disaffirmance to avoid it and it cannot be validated by ratification. A contract wholly void is void as to everybody whose rights would be affected by it if valid. Where one of two mutually dependent provisions of a contract is void, the parties are not bound by the other provision. A voidable contract, on the other hand, is valid and binding until it is voided by the

party entitled to avoid it. The defect therein may, however, be cured by ratification by the party at whose instance it might have been avoided. The ratification may be by express promise or by the conduct of the parties. It may be express or implied."

It appears, therefore, that in spite of the use of the word "void" in the Canal Zone statute, that Congress merely intended that the contract be voidable as the language in the Canal Zone Code states that although the contract is void on behalf of the corporation and its assigns, it "is enforceable against it or them."

■ The next question to be explored is as to whether or not the contract is executed or executory. After the contract is executed, no longer is it a chose in action but becomes a chose in possession and remedies are applicable for the protection of possessory rights.

■ Words and Phrases has defined an executed contract as one wholly performed on one side, whether it is performed on the other side or not. In the Texas Court of Civil Appeals in the case of Gugenheim v. Hancock, 231 S.W.2d 935, the court held.

"Regardless of any doubt that might once have existed, it has long been settled that an executed contract is one wholly performed on one side, whether it is performed on the other side or not. Where one of the parties has done everything required of him by the terms of the contract and nothing remains for him to do except to receive the purchase price, the contract is executed and the seller has his choice of the three remedies which we have detailed above."

In finding the difference between executory and executed contracts, in 17 Am.Jur.2d at page 341, it was said that:

"Broadly speaking, and to a certain extent, all contracts are executory; when they cease to be so they cease to be contracts."

In the same paragraph it states further:

"An executory contract, it is said, conveys a chose in action, while an executed contract conveys a chose in possession."

In defining how these different choses affect the right to legal redress, the United States District Court, W.D., Ark., in Pratt Laboratories v. Teague, 160 F.Supp. 176, states:

"The exception with respect to executed contracts simply recognizes the fact that when a contract has been completely executed and property rights have vested, then the foreign corporation can take necessary action to protect its property rights so long as it does not rely on a contract barred by the statute."

In Jerrold-Stephens Co. v. Gustaveson, District Court, Mo., 138 F.Supp. 11, in determining the Missouri law, it is stated:

"The Missouri courts have always and uniformly protected the property rights of such corporations, even though growing out of contracts held 'void' because the corporation was unlicensed in Missouri when they were made, whenever it could do so without giving effect to the void contract itself."

In construing the Arkansas statute, which is not identical with the Canal Zone statute but prevents any contract from being made by a corporation that has not qualified from being enforced "be it either in law or in equity", the court in Republic Power and Service Company v. Gus Blass Company, 165 Ark. 163, 263 S.W. 785, said:

"It is insisted that, although the contract may be an intrastate one and void under the statute, and not enforceable under it, a different rule prevails where the contract is fully executed.

"It is pointed out that the former decisions of this court are in line with this doctrine, and fully recognize the distinction between executory and executed void contracts to the effect that, while suits to enforce the former may always be defended on the ground of their invalidity, no relief prayed on such ground can be granted with respect to the latter."

It is held, therefore, that particularly in view of the extenuating circumstances existing in the Canal Zone, failure of a foreign corporation to comply with the statutory requirements for doing business does not necessarily prevent recovery on executed contracts. As long as the contract remained executory, the plaintiff could not have coerced the defendant, but its performance gives plaintiff the right to proceed. See 23 Am. Jur., Section 356 at page 330.

In conclusion it appears that if the Canal Zone were such a complete jurisdiction that there were domestic corporations formed under its laws and that there were many private entities contracting with corporations that needed the protection of having process agents, that this court might feel itself constrained to adhere to the harsher rule to establish a precedent that would more effectively discourage any corporation from engaging in business in the Canal Zone without full compliance with the Canal Zone provisions. Such needs do not appear, however, and in view of the fact that the Canal Zone Government and the United States Government own all of the property in the Zone and exert control over all of the construction and contracts and most of the others and have ample penalties to impose upon non-complying corporations, it appears that the least severe rule is the most just to apply. This is particularly true when viewed in the light of the proximity of Panama, both geographically and politically, to Canal Zone functions and that both plaintiff and defendant are Panamanian corporations.

The motion for judgment on the pleadings therefore is denied and this case is continued for further orders.