William S. **PATTERSON**; Nelson **Radwan and The Estate of Perry L. Greer, Appellants,**

v.

**ESTATE OF Hilary J. BOONE, Appellee.**

No. 2002–CA–001912–DG.

Court of Appeals of Kentucky.

Dec. 5, 2003.

Discretionary Review Denied by Supreme Court Dec. 8, 2004.

Karen J. Greenwell, Mark T. Mac-Donald, Wyatt, Tarrant & Combs, LLP, Robert W. Fleming, Woodward, Hobson & Fulton, LLP, Lexington, KY, for appellants.

Phillip D. Scott, Brian M. Johnson, Greenbaum, Doll & McDonald, PLLC, Lexington, KY, for appellees.

Before EMBERTON, Chief Judge; JOHNSON and KNOPF, Judges.

## OPINION

EMBERTON, Chief Judge.

This case involves an interpretation of KRS[1] 396.055, pertaining to the allowance and disallowance of claims by the personal representative of an estate. The Fayette District Court held that the personal representatives could not disallow a claim after having allowed sixteen months to pass and having taken no action as to allowance or disallowance of the claim. The circuit court reversed, holding that the representatives could disallow the claim anytime prior to payment, and that the trial court abused its discretion in finding insufficient cause to disallow the claim. The circuit court remanded the case to the district court for a decision on the merits. We agree with the circuit court in part and reverse in part.

Hilary J. Boone, III, died testate on April 25, 1997. On May 21, 1997, the estate was opened in the Fayette District Court, Probate Division and Caroline Boone and the National City Bank, Kentucky, were appointed as co-executors.

On October 21, 1997, William Patterson, Nelson A. Radwan and Perry L. Greer timely filed a statement of claim against the estate asserting contingent liability relating to Hilary's guaranty of certain financial obligations of Reclamation Surety Holding Company, Inc. Specifically, the statement of claim alleges that Hilary was a co-guarantor with Patterson, Radwan, and Greer of a contingent obligation for the payment of:

(a) up to $4,728,384.97, exclusive of interest, owed by Reclamation Surety Holding Company, Inc., to PNC Bank, Kentucky, Inc., in its capacity as Successor Trustee of a trust created by Cumberland Surety Insurance Company, Inc. f/k/a Reclamation Surety Insurance Company, Inc., by that certain Master Trust Agreement II dated May 18, 1987 as amended ("PNC Trust Guarantees");

(b) up to $715,757.89, exclusive of interest, owed by Reclamation Surety Holding company, Inc., to PNC Bank, Kentucky, Inc. ("PNC Guaranty"); and (c) up to $323,130.73, exclusive of interest, owed by Reclamation Surety Holding Company, Inc., to Fifth Third Bancorp Bank, Kentucky ("Fifth Third Guaranty").

---

1. Kentucky Revised Statutes.

Attached to the claim was a "Release and Amended Guaranty Agreement" allegedly creating the PNC Trust Guaranties. The copy was not signed by Hilary. Confronted with the claim, the estate began to investigate whether Hilary had ever signed the document. The claimants contend that after they executed the document, a copy was forwarded to Hilary's counsel for signature and they assumed the signed copy was located in counsel's office.

Sixty days since the filing of the statement of claim passed without action by the estate. The estate asserts that thereafter it continued to investigate the claim and finally determined that the amendment was never signed by Hilary and in February 1999, petitioned the court to permit the estate to disallow the claim. Following a hearing, the district court denied the petition. The circuit court reversed and this appeal followed.

Our decision rests in part on the interpretation of KRS 396.055(1), which provides in its entirety:

As to claims presented in the manner described in KRS 396.015 within the time limit prescribed in KRS 396.011, the personal representative may mail a notice to any claimant stating that the claim has been allowed or disallowed. If, after allowing or disallowing a claim, the personal representative changes his decision concerning the claim, he shall notify the claimant. The personal representative may not change a disallowance of a claim after the time for the claimant to commence an action on the claim has run and the claim has been barred. Every claim which is disallowed in whole or in part by the personal representative is barred so far as not allowed unless the claimant commences an action against the personal representative not later than sixty (60) days after the mailing of the notice or disallowance of partial allowance if the notice warns the claimant of the impending bar. Failure of the personal representative to mail notice to a claimant of action on his claim for sixty (60) days after the time for original presentation of the claim has expired has the effect of a notice of allowance, except that upon petition of the personal representative and upon notice to the claimant, the court at any time before payment of such claim may for cause shown permit the personal representative to disallow such claim.

Our review of issues of law is *de novo*.[2] The estate maintains that at any time before payment of the claim, the personal representative can disallow a claim that has been allowed by reason of the failure of the estate to act on the claim. In support of this contention, the estate cites numerous cases from three sister jurisdictions which have held that under their respective probate codes, a personal representative can disallow a previously allowed claim at any time and for any reason.[3] Our review of the applicable statutes in those states and of the uniform probate code, however, reveals that our statute contains a significant distinction. In Nebraska, Colorado and Maine the statutes follow the identical language of the uniform probate code. Under those statutes after a claim is allowed or disallowed by notice to the claimant or by the personal representative's inaction, the personal representative may change his decision by notifying the claimant. Finding that the

2. *Hardin County Schools v. Foster*, Ky., 40 S.W.3d 865, 868 (2001).

3. See *In re: Estate of Krichau*, 1 Neb.App. 398, 501 N.W.2d 722 (1992); *Estate of Roddy*, 784 P.2d 841, 844 (Colo.App.1989); *Swett v. Estate of Wakem*, 490 A.2d 679 (Me.1985).

personal representative's ability to change a decision is unconditional, the court in *In re: Estate of Krichau,*[4] reasoned:

> If the statute is interpreted to cause the personal representative to irrevocably allow the claim by not giving notice of disallowance within 60 days of its filing, personal representatives will be forced to deny all claims except those claims that are unquestionably good. If the personal representative can change his or her mind and disallow a claim that was once allowed, the worst that could happen is that the claimant would be in a state of uncertainty. If certainty is an important element to a claimant, that claimant can always petition the court to allow the claim. In this regard, the claimant would be in no greater state of uncertainty than any other litigant doing business with a dilatory party and would suffer no greater disadvantage than a claimant who has received notice of allowance when the personal representative still has the power to disallow the claim.

Our legislature, in contrast, has specifically placed a limitation on the discretion of a personal representative to disallow a claim previously allowed by reason of inaction. We agree with the estate that the only time-limitation on the discretion to disallow the claim is that it must be done before payment. However, the legislature later provided that when the claim has been allowed by the personal representative's inaction, in order to later disallow the claim the representative is required to petition the court and to "show cause." Obviously, the legislature rejected the absolute right to disallow a claim previously allowed by the representative's inaction.

The term "cause" is not defined in KRS 396.055. Nor does the statute explicitly state whether the showing of cause relates to the reason that the representative did not act on the claim before the expiration of sixty days, or to the merits of the claim itself. We find that when read in the context of the entire statute, the "cause" referred to in KRS 396.055(1) refers to a reasonable cause for not responding to the claim within the sixty-day period and not to the merits of the claim.

During the initial sixty days, a personal representative may, without court approval, disallow a claim by simply notifying the claimant. The claimant then has sixty days to commence an action against the personal representative and have the court consider the merits of the claim.[5] If the claim is allowed, after the expiration of the appropriate time specified, the claimant can petition the court for payment.[6] We can find no language in the statutes precluding the claimant from seeking the exact same remedy if the court permits the estate to disallow a claim previously allowed by the estate's failure to take action. Under either circumstance, the claimant has the same recourse. Without reaching the merits of the claim, once the court concludes that the representative has shown cause for not taking action, the claim is then deemed disallowed, and the claimant is required to file a claim for a decision on the merits.

We now turn to the factual basis for the estate's failure to allow or disallow the claim within the sixty-day period.[7]

4. 1 Neb.App. 398, 501 N.W.2d 722, 726 (1992).

5. KRS 396.055(1).

6. KRS 396.075(1).

7. There is disagreement between the parties whether the district court found the claim barred as a matter of law because the estate failed to act within sixty days or, whether on the facts, it refused the petition because of the failure to show cause. The district court or-

The statute is discretionary providing that the court "may for cause shown" permit the claim to be disallowed. As with all discretionary powers of a lower court, the appellate courts cannot set aside the lower court's finding unless there is a clear abuse of discretion.[8]

The estate was presented with a claim for a considerable amount. Although the statement of claim states that Hilary was a co-guarantor, the "Release and Amended Guaranty Agreement" filed in support of its claim was not signed by Hilary. The estate then began its investigation as to the validity of the claim. It appears from the record that Hilary's financial dealings were complex, and various documents were needed to be accumulated and reviewed before the estate could make an informed decision as to whether to allow or disallow the claim. We agree with the circuit court and find that the district court abused its discretion in finding the estate's reason for the delay in seeking a disallowance was insufficient to establish cause.

■ The circuit court remanded the action to the district court to "make a finding on the substantive merits of the estate's petition to disallow the claim." This is erroneous. Once it is found, as we have, that there is sufficient cause to excuse the estate's inaction in allowing or disallowing the claim, without regard to the merits, the estate may disallow the claim. The claimant can then commence an action within sixty days of the disallowance.

The order of the circuit court is affirmed in that it holds that the trial court abused its discretion in not permitting the disal-

lowance of the claim. The claim is deemed disallowed and no remand is required.

ALL CONCUR.

der recites that the personal representative failed to show cause. Additionally, it held a hearing at which proof was presented as to the reason for the delay. The district court's order clearly contained a finding of fact and

we, as was the circuit court, are bound by the abuse of discretion standard.

8. *Farmland Mut. Ins. Co. v. Johnson*, Ky., 36 S.W.3d 368, 378 (2000).