**J. Fox DeMOISEY, Executor of the Estate of Jean C. Fox DeMoisey, Appellant,**

v.

**RIVER DOWNS INVESTMENT COMPANY, Appellee.**

**The Estate of Jean C. DeMoisey, J. Fox DeMoisey, Executor, Appellant,**

v.

**River Downs Investment Company, Appellee.**

Nos. 2003–CA–002458–DG, 2004–CA–000370–MR.

Court of Appeals of Kentucky.

Feb. 11, 2005.

As Modified March 11, 2005.

Richard W. Hill, Louisville, KY, for appellant.

Richard L. Robinson, Paul Alley, Ft. Mitchell, KY, for appellee.

Before SCHRODER, TAYLOR, and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

Under KRS 372.010, a promissory note issued to cover an otherwise lawful horseracing debt is void and unenforceable. We are called upon to decide whether an executor's failure to disallow a claim based on such a note, within the time period prescribed by statute, converted the void debt into one required to be paid. We hold that it did, and we therefore affirm the decisions of the Campbell Circuit Court.

Prior to his death, Jean C. DeMoisey had a telephone betting account with River Downs Investment Company. Approximately two weeks prior to his death, DeMoisey signed a promissory note in favor

of River Downs for the $34,510.80 deficit in the account. DeMoisey died on December 27, 1998. J. Fox DeMoisey (executor) was appointed executor of his father's will on February 4, 1999. On March 15, 1999, River Downs sent a written claim based on the promissory note to the executor, who acknowledged receipt on March 22. On June 28, 1999, the executor sent a letter to River Downs, explicitly stating that it was not a rejection of the claim, but requesting more information concerning the note.

In November 2001, River Downs sent the executor a letter inquiring about the status of the claim. Nearly a year later, on October 24, 2002, counsel for the executor sent a letter to River Downs disallowing the claim as void pursuant to KRS 372.010, and advising River Downs of the sixty-day time period in which any action must be filed under KRS 396.055.

River Downs then filed concurrent collection actions in the Campbell District Court (No. 02–C–1897) and the Campbell Circuit Court (No. 02–CI–1703), each seeking to collect the debt. The circuit court's order granting the executor's motion for summary judgment was not appealed. In the district court action, the court initially dismissed the claim as being in excess of the court's jurisdictional limit, but it subsequently set that order aside and held the matter in abeyance pending a probate hearing as to the claim and whether the executor had ever disallowed the claim.

Following a June 2003 hearing in the probate matter (No. 99–P–68), the Campbell District Court found that the executor had allowed the claim by failure to timely disallow it, that the attempt to disallow the claim in October 2002 was ineffective, and that the executor had presented no evidence to justify a late disallowance. As a result, the district court also dismissed the collection action (No. 02–C–1897) as being moot.

River Downs then filed a motion in the circuit court action (No. 02–CI–1703), requesting the court to set aside the summary judgment in favor of the estate. The Campbell Circuit Court held the motion in abeyance pending its ruling on the executor's appeal of the district court probate decision (No. 99–P–68) regarding the timeliness of the disallowance of the claim. After the circuit court affirmed the probate decision, it set aside its earlier judgment in No. 02–CI–1703 and subsequently dismissed that action. The executor filed a direct appeal from the circuit court's dismissal of action No. 02–CI–1703, and this court granted discretionary review as to the probate decision.

The executor's first two arguments are related and touch on the underlying transaction: 1) that the district court erred in allowing a claim which is void, and 2) that the district court erred in allowing a claim which also constitutes illegal activity.[1] The executor cites *Kentucky Off–Track Betting, Inc. v. McBurney*,[2] in support of his argument that the debt and the note at issue in this case are void and therefore uncollectible pursuant to KRS 372.010.[3]

---

1. The executor's argument concerning illegality is based on both KRS 528.050, concerning possession of gambling records, and Ohio Admin. Code 3769–3–32, regulating telephone account wagering.

2. 993 S.W.2d 946 (Ky.1999)

3. Because we hold that the claim was allowed and payable under KRS Chapter 396, we need not decide the effect of the 2000 enactment of KRS 372.005 which provides that KRS Chapter 372 does "not apply to betting, gaming or wagering that has been authorized, permitted, or legalized, including ... all activities and transactions permitted under KRS Chapters 154A, 230, and 238."

The executor's argument fails to take into account the effects of the overlay of KRS Chapter 396 on this case. While the executor makes a compelling argument that the transaction is void, the fact remains that upon presentation of the claim, the executor failed to disallow the claim in the time period required. Under KRS 396.011, claims must be presented within six months after the appointment of the personal representative. No question exists that River Downs timely presented its claim. Under KRS 396.055(1), a personal representative has only two options with respect to a claim: either allow it or disallow it. If it is allowed, the claim is payable.[4] If it is disallowed, the claimant must commence a separate collection action against the personal representative.[5] A third possibility, inaction, results in allowance:

> Failure of the personal representative to mail notice to a claimant of action on his claim for sixty (60) days after the time for original presentation of the claim has expired has the effect of a notice of allowance, except that upon petition of the personal representative and upon notice to the claimant, the court at any time before payment of such claim may for cause shown permit the personal representative to disallow such claim.[6]

In this case, the executor was appointed on February 4, 1999. Claims were required to be presented within six months following that date, i.e., by August 4, 1999.[7] The executor was required to either allow or disallow claims within sixty more days, or by approximately October 3, 1999. In this instance, the executor requested more information concerning the claim, as he was permitted to do.[8] Doing so, however, did not relieve him of the obligation to take some action on the claim by October 1999. As he took no action, the passage of time resulted in an allowance of the claim. Only by petitioning the court, and showing cause for not responding to the claim, could the executor then disallow the claim.

In the recent case of *Patterson v. Estate of Boone*,[9] the court discussed the meaning of KRS 396.055 and the requirement that a personal representative must show cause for failing to act on a claim. The court stated in detail:

> Our legislature, in contrast, has specifically placed a limitation on the discretion of a personal representative to disallow a claim previously allowed by reason of inaction. We agree with the estate that the only time-limitation on the discretion to disallow the claim is that it must be done before payment. However, the legislature later provided that when the claim has been allowed by the personal representative's inaction, in order to later disallow the claim the representative is required to petition the court and to "show cause." Obviously, the legislature rejected the absolute right to disallow a claim previously allowed by the representative's inaction.
>
> The term "cause" is not defined in KRS 396.055. Nor does the statute explicitly state whether the showing of cause relates to the reason that the representative did not act on the claim before the expiration of sixty days, or to

---

4. KRS 396.075.

5. KRS 396.055(1).

6. KRS 396.055(1).

7. KRS 396.011.

8. Under KRS 396.026, a personal representative may request formal information regarding a claim. A personal representative may certainly make a more informal request concerning a claim, as occurred in this case.

9. 150 S.W.3d 58 (Ky.App.2003).

the merits of the claim itself. We find that when read in the context of the entire statute, **the "cause" referred to in KRS 396.055(1) refers to a reasonable cause for not responding to the claim within the sixty-day period and not to the merits of the claim.**[10]

In *Patterson,* the claim presented was a contingent liability of nearly $6,000,000. The cause shown by the Boone estate related to the size of the debt, the complexity of the decedent's financial dealings, and the need to accumulate a number of documents before that estate could make an informed decision as to allowance or disallowance. This was held to be a sufficient cause for the delay of slightly over one year in seeking to disallow, and the Boone estate was permitted to disallow the claim.

Here, by contrast, the Campbell District Court specifically found that "[n]o evidence has been presented to justify or even to explain the failure to file a timely notice of disallowance." Our review of the record confirms that the sole ground for the executor's argument that disallowance should be permitted was the holding in *Kentucky Off–Track Betting, Inc. v. McBurney* that a transaction of this type was void. This ground, however, which related to the merits of the claim had nothing to do with any delay in disallowing the claim by the executor. Furthermore, the decision in *McBurney* was rendered in June 1999, which was well before the October 1999 expiration of the time period for the executor to take action. The record indicates that the executor exchanged correspondence, had discussions with River Downs

concerning the debt, and received records relating to the underlying transactions. Until October 2002, the executor took no steps to disallow the claim, and he did not approach the district court for permission to disallow the claim until June 2003. However, as noted by this court in *Patterson* and by the Campbell District Court below, the issue at any hearing under KRS 396.055(1) is whether reasonable cause is shown for failing to respond to the claim within the sixty-day period, and not whether the claim has merit.

Once the claim was allowed, it was payable under KRS 396.075, which provides that if an allowed claim is not paid, the claimant may apply to the court for an order directing the personal representative to satisfy the claim to the extent that funds in the estate are available. The reference in KRS 396.075 to "the court" clearly pertains to the district court, as probate matters fall within the exclusive jurisdiction of the district court, and the allowance or disallowance of claims is not designated as an adversarial proceeding.[11]

At the point in the proceeding that River Downs filed the circuit court action (No. 02–CI–1703), the executor had failed to disallow the claim, and the claim was then still payable by an application and order from the district court. Since the circuit court lacked subject matter jurisdiction, River Downs's suit should have been dismissed. "[A]ny attempt of a court to adjudicate a case when it has no jurisdiction of the *subject matter* of the action . . . is void and of no effect."[12] Thus, the original summary judgment was not *res judicata,*

---

10. *Id.* at 61 (emphasis added).

11. KRS 24A.120(2), (3). The amount of money involved in the claim is irrelevant. *See e.g., Privett v. Clendenin,* Ky., 52 S.W.3d 530, 532 (2001) (amount in controversy in an action under the Uniform Transfers to Minors Act (UTMA) is not dispositive, even if it exceeds the normal jurisdictional limit of district court, since the UTMA statute grants exclusive jurisdiction to district court).

12. *Max Ams, Inc. v. Barker,* 293 Ky. 698, 701, 170 S.W.2d 45, 47 (1943) (emphasis original).

and any failure of the circuit court to permit further pleadings was not error.

The executor's final argument is that any payment of the claim creates an absurd result, since the estate would have an immediate claim for the recovery of gambling losses under KRS 372.020. This argument, however, was not advanced to the Campbell District Court. As such, we will not consider it on this appeal.[13]

The judgments of the Campbell Circuit Court are affirmed.

ALL CONCUR.

---

**13.** *Hibbitts v. Cumberland Valley Nat'l Bank & Trust Co.,* 977 S.W.2d 252, 253 (Ky.App.1998) (court holding that " '[t]he Court of Appeals is without authority to review issues not raised in or decided by the trial court' " (quoting *Regional Jail Auth. v. Tackett,* 770 S.W.2d 225, 228 (Ky.1989))).