RENDERED: MAY 21, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0832-MR

KENNETH KASACAVAGE, EXECUTOR,
ESTATE OF JAMES L. GIRTON,
BY AND THROUGH SUCCESSOR EXECUTRIX,
PAMELA FAYE WILLIAMS                                    APPELLANT


APPEAL FROM HENDERSON CIRCUIT COURT
HONORABLE KAREN L. WILSON, JUDGE
ACTION NO. 16-CI-00543

v.


CARROLL BRANTLEY,
FRESH IMPRESSIONS CLEANING
AND CRIME SCENE,
FIFTH THIRD BANK TRUSTEE UNDER WILL,
AGNES ELEANOR GIRTON,
HALEY ELIZABETH PIPPIN,
JESSICA NICOLE PIPPIN,
SHAWN M. PIPPIN,
MIRANDA DAWN ROWE (PIPPIN),
UNKNOWN SPOUSE OF HALEY ELIZABETH PIPPIN,
UNKNOWN SPOUSE OF JESSICA NICOLE PIPPIN, AND
UNKNOWN SPOUSE OF SHAWN M. PIPPIN                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE: Appellant, Kenneth Kasacavage, executor of the Estate of James L. Girton, by and through the successor executrix, Pamela Faye Williams (the "Estate"),[1] appeals the Henderson Circuit Court's judgment against it. For the following reasons, we affirm.

BACKGROUND

James L. Girton died on or about August 30, 2015. Apparently, Mr. Girton died at home and, unfortunately, his body was not found for several days or weeks. His body decomposed, which necessitated cleaning and restoration of his house.

Mr. Girton's will named Kenneth Kasacavage as executor of Mr. Girton's estate. After Mr. Girton died, Mr. Kasacavage contacted the coroner for a recommendation regarding cleaning and restoration services at the house. The

[1] Appellant's notice of appeal lists Pamela Williams' middle name as "Fayle," although it is listed as "Faye" in all other parts of the notice and in the record on appeal. James L. Girton's name is spelled alternatively in the record as "Girton" or "Girten." The notice of appeal reads "Girton." Additionally, the notice of appeal identifies "Fresh Impressions Cleaning and Crime Scene." Fresh Impressions Cleaning and Crime Scene Restoration are businesses owned by Appellee, Carroll Brantley. Finally, the notice of appeal appears to designate Miranda Dawn Rowe (Pippin) as a party-appellee. Miranda Dawn Rowe was named a co-executrix of the Estate in 2017.

coroner recommended the businesses, Fresh Impressions Cleaning and Crime Scene Restoration, which were both owned by Appellee, Carroll Brantley ("Brantley"). When Mr. Kasacavage and Aleshia Edwards, the operator of Brantley's businesses, met to inspect the house, they discovered extensive damage, including mold throughout the house and evidence of previous flooding in the basement. The Estate does not dispute that the house could not be sold in that condition. Mr. Kasacavage retained Brantley to clean up the property so that he could get it in shape to sell. The parties agree that Mr. Kasacavage, at that point, did not ask Brantley for its hourly rate or for an estimate of how much the work would cost. At some later point, Mr. Kasacavage testified that Brantley told him the work would cost between $10,000.00 to $15,000.00.

Brantley performed work at the house, which included replacing subflooring and carpeting, cleaning, landscaping, removing unwanted items, and hiring subcontractors as needed. However, Mr. Girton's family members became frustrated with Brantley's work, which they felt was inferior.

Toward the end of October 2015, Mr. Kasacavage informed Brantley that its services were no longer needed. By that time, Mr. Kasacavage had paid Brantley two payments of $6,000.00, totaling $12,000.00. Brantley sent Mr. Kasacavage an invoice for the balance due, which totaled $14,538.00. Mr. Kasacavage refused to pay.

On April 19, 2016, Brantley filed a proof of claim in the probate case of the Estate in the amount of $14,538.00. On that same day, Brantley also filed a mechanic's lien in the Henderson County Clerk's office for that same amount. The Estate does not dispute that it failed to disallow the claim within sixty days pursuant to KRS[2] 396.055.

After not receiving payment, Brantley filed suit against the Estate in August 2016. In response, the Estate filed an answer and counterclaim, alleging Brantley had double billed the Estate, that the work billed in the invoice was unsubstantiated, and the bill was possibly fraudulent.

As an aside, in June 2017, Mr. Kasacavage moved to withdraw as executor of the Estate, which the trial court permitted. Immediately thereafter, the Estate with new co-executors, Ms. Williams and Ms. Rowe, moved for summary judgment. The Estate alleged that Mr. Kasacavage lacked authority to enter into an agreement regarding work on the house and that the Estate's devisees had not received proper notice of Brantley's lien. The trial court denied the Estate's motion, holding that Mr. Kasacavage, as executor, was an agent for the devisees when he hired Brantley to clean the house. The Estate is *not* appealing that order.

On January 4, 2018, the trial court held a bench trial. Ms. Edwards testified on behalf of Brantley regarding the condition of the house and property

---

[2] Kentucky Revised Statutes.

when Brantley was retained, the work performed, and the amount due. Mr.

Kasacavage testified on behalf of the Estate, as well as Ms. Williams and Ms.

Rowe.

On March 27, 2018, the trial court entered its judgment in the amount

of $14,538.00[3] against the Estate. The court concluded that Brantley's bill was

"justly due" and held:

> Edwards testified as to the condition of the house and the
> work done. While [Brantley] billed for many hours of
> labor, there were multiple contractors on the job. While
> the [Estate] argue[d] that [Brantley] overcharged for its
> services, there was no evidence of what a more
> reasonable value would be.

March 27, 2018 Order, p. 4.

The Estate filed a CR[4] 59.05 motion to vacate the judgment, which the

trial court denied. This appeal followed.[5] Additional facts will be developed as

necessary.

## ANALYSIS

---

[3] In the trial court's March 27, 2018 judgment, the amount due is listed as $14,**538**.00, but also as $14,**358**.00. The Court assumes the latter number is a typographical error because the complaint refers to the amount as $14,538.00. Regardless, the judgment was satisfied in June 2019, so the Court assumes the amount is not in controversy.

[4] Kentucky Rules of Civil Procedure.

[5] Notably, although Appellant filed its notice of appeal in 2018, various procedural motions delayed briefing until 2021.

For its appeal, the Estate argues that the trial court erred by finding that Brantley presented sufficient evidence to support its claim. Specifically, the Estate claims that Brantley's bills lacked an adequate description of services and dates of services, that photographic exhibits demonstrated the house "remained in shambles" after $12,000.00 had already been paid, that Brantley failed to complete the work, and that the total bill was unconscionable. The Estate requests this Court reverse the trial court's decision.

In response, Brantley argues that the trial court's decision is not clearly erroneous. Brantley claims that, although the Estate disagrees with the amount of time and effort it spent to clean up the property, the house needed extensive attention. Also, Brantley admits its work on the house was not finished but claims that was because the Estate told Brantley to cease activity on the property before the job was completed. Brantley claims the evidence supported the trial court's findings and requests the judgment be affirmed.[6]

---

[6] Brantley also argues that the judgment was payable pursuant to KRS 396.055. The trial court's March 27, 2018 order mentions KRS 396.055 and recites the fact that "it is the personal representative's responsibility to disallow a claim within sixty days" and "[u]nless the representative shows good cause, failure to disallow the claim has the effect of a notice of disallowance [sic], making the claim payable." March 27, 2018 Order, p. 4 (citing *DeMoisey v. River Downs Inv. Co.*, 159 S.W.3d 820, 822 (Ky. App. 2005)). However, the trial court did not make a specific finding that the Estate failed to disallow the claim within sixty days or failed to show good cause. Because Brantley did not file a cross-appeal on this issue and the Estate did not address this issue, we will not consider it on appeal.

We begin by noting that this case was tried by the trial court sitting without a jury. The case is before this Court upon the trial court's findings of fact and conclusions of law and upon the record made in the trial court. Accordingly, appellate review of the trial court's findings of fact is governed by the rule that those findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *see also Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009). A factual finding is not clearly erroneous if supported by substantial evidence. *Patmon*, 280 S.W.3d at 593. And, substantial evidence is evidence, when taken alone or considering all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

At trial, Ms. Edwards testified regarding the terrible condition of the house and property when the Estate hired Brantley. Furniture and books showed evidence that the basement had previously flooded. The house had mold and mildew throughout, along with black spots which were later identified as a fungus. The floor was damaged, through the subfloor and into the basement, from the decomposition of Mr. Girton's body. Sadly, the basement also contained the remains of a dog in a crate. Ms. Edwards further testified that she had been operating Brantley's cleaning businesses since 2002 or 2003 and this house had the

worst case of hoarding she had ever seen. Thus, many items needed to be removed from the house. In addition, the windows, window sills, and roof were all damaged.

Due to the hazardous conditions, Ms. Edwards testified that her workers had to wear hazmat suits and remove flooring and drywall, as well as furniture as a first phase. They utilized "ozone machines" to clean the air inside the house before they could begin cleaning. Through photographs introduced into evidence, Ms. Edwards explained the steps Brantley took to clean-up the house. She also testified that the house stood on several acres of land that had been neglected, which necessitated extensive mowing and weed-eating. Further, she testified regarding subcontractors that Brantley retained to help with the house. For instance, they discovered the house did not have running water, which was obviously needed to clean. The Estate asked Brantley to hire a subcontractor to locate the well and have it repaired, which it did.

Brantley introduced its invoices into evidence through Ms. Edwards. She testified about Brantley's various charges, as well as amounts paid to subcontractors. Ms. Edwards testified that, over the years, Brantley had been retained hundreds of times to provide cleaning services and that Brantley's charges to the Estate were fair and reasonable for the services it provided.

On cross-examination, the Estate questioned the number of hours spent by Ms. Edwards and Brantley's workers and subcontractors for the work performed at the house. Ms. Edwards admitted that Brantley did not provide an estimate to the Estate before beginning work, although she testified that Mr. Kasacavage never requested one. She also admitted that she did not have a further breakdown of Brantley's charges other than what was contained in the provided invoices.

For the Estate, Mr. Kasacavage, Ms. Williams, and Ms. Rowe testified regarding their dissatisfaction with Brantley's work. They also expressed frustration with the fact that Brantley had not provided an estimate before performing the work at the house.

The Court understands the Estate was unhappy with Brantley's work and the amount charged. However, the Estate was able to cross-examine Ms. Edwards regarding the work performed and the invoices for that work. In addition, the Estate had the opportunity to call witnesses to dispute the quality or amount of work performed compared to Brantley's charges for that work. The Estate did not call any such witnesses.

Based on the testimony and evidence presented at trial, the trial court found Brantley's bill was "justly due." As stated, we shall not set aside the trial court's findings unless clearly erroneous. CR 52.01. Also, we give due regard to

the trial court's opportunity to judge the credibility of the witnesses presented. *Id.*

Based on our review, Brantley presented sufficient evidence through the testimony

of Ms. Edwards, photographs, and invoices to support the trial court's decision.

Accordingly, we conclude that the trial court's findings were not clearly erroneous.

## CONCLUSION

For the above reasons, we affirm the trial court's order.

ALL CONCUR.

BRIEF FOR APPELLANT:

Mark Joseph Smith
Timothy Denison
Louisville, Kentucky

BRIEF FOR APPELLEE,
CARROLL BRANTLEY:

Harry L. Mathison
Henderson, Kentucky